(October 22, 1924.)

IRA H. SHALLIS, Respondent, v. NICK FIORITO, JOE FIORITO and G. FIORITO, a Partnership Doing Business Under the Firm Name and Style of FIORITO BROTHERS, Appellants.

[240 Pac. 932.]

CONTRACTS—PARTIAL PERFORMANCE—RECOVERY QUANTUM MERUIT—INSTRUCTIONS CONTRARY TO EVIDENCE—REVERSIBLE ERROR.

1. Partial performance of a contract entitles one to recover compensation for the work done thereunder, according to the contract price, less damages occasioned by reason of the failure to complete the contract.

2. Where an action is brought by the assignee to recover on *quantum meruit* for an alleged balance due contractors for work done on an abandoned contract which involved an accounting and defendants claim damage for its breach, and a general verdict for the balance is returned for the plaintiff, and the court has erroneously directed the jury to disallow a credit which the uncontradicted evidence shows the defendants were entitled to receive, a new trial will be awarded.

APPEAL from the District Court of the Eighth Judicial District, for Kootenai County. Hon. John M. Flynn, Judge.

Action on contract. From judgment for plaintiff, defendants appeal. *Reversed and remanded.*

W. B. McFarland, for Appellants.

"For plaintiff's failure to finish its contract defendant can offset the amount he paid another to complete it, this being a reasonable amount, though this price was agreed on only after such person threatened to abandon his first contract as a losing proposition." (*Smith Sand & Gravel Co. v. Corbin,* 102 Wash. 306, 173 Pac. 16; 9 C. J. 812, 815.)

Publisher's Note.

1. *Quantum meruit* under special contract, see note in 19 **Am. Dec.** 272. See, also, 6 R. C. L. 973, 975.

Cameron McEachern and Robt. H. Elder, for Respondent.

"Though one's failure to fully ₒperform the contract for his services is inexcusable, he may recover the reasonable value of services rendered, less any damage to the employer on account of the breach." (*Stolle v. Stuart*, 21 S. D. 643, 114 N. W. 1007; *Huber v. Blackwell Lumber Co.*, 27 Ida. 373, 148 Pac. 903; *Saunders v. Short*, 86 Fed. 225, 30 C. C. A. 462; *McDonough v. Evans Marble Co.*, 112 Fed. 634, 50 C. C. A. 403; *Goodwin v. Merrill*, 13 Wis. 658; *Gomer v. McPhee*, 2 Colo. App. 287, 31 Pac. 119; *Gill v. Johnstown Lumber Co.*, 151 Pa. 534, 25 Atl. 120; Williston on Contracts, sec. 1363.)

WILLIAM A. LEE, J.—This action is for a sum alleged to be due upon a contract between Lee & Paus, copartners, and Fiorito Brothers, also copartners, who had taken a contract to construct a part of a highway in Idaho between Coeur D'Alene and the Washington state line and had employed Lee & Paus to haul the sand and gravel required for this work at an agreed price of sixty cents per cubic yard for deliveries from what was known as Kennedy's pit, and if sand and gravel was obtained from a different place appellants agreed to pay a flat price of thirty-five cents per cubic yard based upon a two-mile haul. The contract required Lee & Paus to give a surety bond in the sum of $10,000 for the performance of their part of the agreement, and they assigned to respondent all sums due or to become due them under the contract, and their assignee brings this action to recover $3,094.80 alleged to be due for the delivery of 5,158 yards of sand and gravel on the basis of sixty cents per yard. Appellants answered and denied that there was anything due respondent and alleged that Lee & Paus, his assignors, had defaulted in the performance of their contract and abandoned the same; that by reason thereof appellants were compelled to procure other persons to complete the contract, and in so doing were required to pay a greater amount than they would have been required to pay Lee &

Paus had they delivered the yardage necessary to complete the pavement, which their contract required them to do. The cause was tried to the court with a jury, which returned a verdict for respondent in the sum of $3,094.20. From the judgment on the verdict this appeal is taken.

We think a proper construction of the contract required Lee & Paus to haul the entire amount of sand and gravel required to complete the work undertaken by appellants.

The undisputed evidence shows that for the completion of the work undertaken by appellants in constructing this highway there was hauled 34,741 cubic yards of sand and gravel. Of this Lee & Paus delivered or caused to be delivered the first 5,157 yards before they abandoned the work, and thereafter appellants contracted with the Cascade Investment Company to haul the remaining amount of sand and gravel required, which was 29,584 yards, and were required to pay, or did pay, this latter company on a basis of ninety cents per cubic yard. Respondent contends that this price was in excess of the reasonable value of the work, but this question was submitted to the jury under proper instructions.

The court in effect instructed the jury that defendants were entitled to offset against any amount that might be due Lee & Paus for their work in hauling sand and gravel any amount paid by defendants for labor or material bills incurred by Lee & Paus and any sum paid for hauling sand and gravel in the construction of said highway in excess of the amount they were to receive for said hauling, provided the sum paid for finishing the hauling was under the circumstances reasonable, which is a correct statement of the law applicable to the facts of this case, and although the verdict is a general verdict for the exact amount that would have been due Lee & Paus for the actual yardage they caused to be delivered upon their contract had there been no offsets, there is no reason to suppose the jury did not find the additional amount which appellants were required to pay the Cascade Investment Company to complete the Lee & Paus contract a reasonable price for doing this work in accordance with the instructions of the court.

The evidence shows that the Cascade Investment Company hauled 29,584 yards at an agreed price of ninety cents per yard, making $26,625.60 which appellants were required to pay in order to complete the hauling of the total yardage needed. It is also shown that appellants paid Materne Brothers, who had worked for Lee & Paus before they abandoned their contract, $4,000, for work which they had done in hauling the yardage credited to Lee & Paus. This amount exceeds the contract price of sixty cents per yard which Lee & Paus were to receive under their contract, but may be accounted for by the fact that the hauling done by Materne Brothers for Lee & Paus was upon a mileage basis and greatly in excess of the average mileage haul for the entire yardage Lee & Paus were required to deliver. It also appears that appellants paid other truck drivers in the employment of Lee & Paus while they were engaged on their contract, $1,630.50, and also $650 for gasoline purchased on account of Lee & Paus, all of which expenditures were incurred in the delivery of the yardage on account of Lee & Paus, for which respondent seeks to recover in this action. These three items make a total of $6,280.50 paid by appellants on account of the hauling done by Lee & Paus, which appellants were required to pay in order to protect themselves against labor and materialmen's claims for which the contractors were liable, under the laws of this state. If to the total of the above items there is added the excess which appellants paid to the Cascade Investment Company to complete the contract of Lee & Paus after they had abandoned the same, over and above the sum that would have been due Lee & Paus, it makes a total of $12,320.70 that appellants were required to pay by reason of Lee & Paus not having completed their contract according to its terms, against which Lee & Paus are entitled to the credit of $10,000 by reason of the payment on account of their guaranty bond, leaving a net excess paid by appellants on account of Lee & Paus not having performed their contract according to its terms, of $2,320.70. That is to say, had Lee & Paus completed their contract for the delivery of the

yardage that the Cascade Investment Company hauled they would have been entitled to receive $20,585.40, on the basis of sixty cents per cubic yard for 23,284 yards hauled from the Kennedy pits and $1.05 per cubic yard for 6,300 yards which the evidence shows was hauled from the Callis pit, the contract providing that if sand and gravel were obtained from any other source than the Kennedy pit appellants would pay a flat price of thirty-five cents per cubic yard, based on a two mile haul. The average haul from the Callis pit was shown to be six miles, thus making $1.05 a yard for sand and gravel hauled from such point to place of delivery. The best terms upon which appellants could procure this work to be completed was ninety cents per cubic yard, or $26,625.60 for the hauling of the required amount of 29,584 yards to complete the paving. It is apparent that when Lee & Paus abandoned their contract, if they left unpaid for labor employed by them and material used for the yardage which they delivered, the cost of such labor and material when paid by appellants was properly offset against the amount due Lee & Paus for the hauling of 5,157 cubic yards which they caused to be delivered upon their contract before they abandoned the same.

In its seventh instruction the court instructed the jury that there was no evidence to support the claim of appellants that they had paid Materne Brothers $4,000 on account of work performed for Lee & Paus in said hauling and that they should disallow this item to appellants. In this we think the court was in error. There is very substantial evidence to support appellants' claim of this payment; one of the Materne Brothers testified positively to this fact, in which testimony he is corroborated by Lee, one of the contractors for whom the work was performed, and also by one of the Fiorito brothers who testified that this amount was paid, and there being no evidence contrary to the testimony of these three witnesses, the instruction that the jury should disallow this claim was error.

With regard to the items aggregating $3,708.10, claimed by appellants to have been paid on account of yardage

41 Idaho—42

hauled independently of that delivered either by Lee & Paus or the Cascade Investment Company, it is clear that these items cannot be allowed, because the entire yardage hauled is accounted for by the amount delivered by Lee & Paus prior to the abandonment of their contract and the yardage subsequently delivered by the Cascade Investment Company to complete the same. Hence it must follow that this sum was not paid for the hauling of sand and gravel on this contract, and the court properly instructed the jury to disregard it.

It is apparent from the foregoing consideration of these various items of account that the jury in arriving at their verdict omitted to take into account the $2,320.70 paid by appellants in excess of what they would have been required to pay Lee & Paus had the original contract for hauling this material been carried out according to its terms.

For the reasons herein stated the cause is reversed, with directions to set aside the judgment and award a new trial, appellants to recover costs of this appeal.

McCarthy, C. J., and McNaughton, District Judge, concur.

(November 20, 1925.)

ON REHEARING.

TRIAL—INSTRUCTIONS—CONSTRUCTION—PROVINCE OF JURY.

    1. In an action by an assignee to recover an alleged balance due contractors for partial performance of an abandoned contract, where defendants claim set-offs, and part of a certain item was not a proper set-off under the theory upon which the case was tried, and part was a proper set-off, an instruction without qualification that the whole of such item should be disregarded by the jury is reversible error, where it is doubtful whether the jury could have understood from the instructions as a whole that they could properly consider any part of the item, and it is impossible to determine from the verdict whether or not they did do so.

    2. Disputed questions of fact are for the jury.

BUDGE, J.—A petition for a rehearing was filed in this case and granted, and the record has been re-examined in

the light of the matters urged in the petition.  Respondent's reasons why the opinion previously rendered should be modified come under two principal heads, of which the first is that this court in its opinion misconstrued the trial court's instruction No. 7 in holding that this instruction advised the jury that there was no evidence to support the claim of appellants that they had paid Materne Brothers $4,000 on account of work performed for Lee & Paus.

Instruction No. 7 advises the jury that "by paragraph V of defendant's affirmative defense, the defendants allege that by reason of the default of Lee & Paus to continue the performance of said contract entered into between Lee & Paus and the defendants, the defendants were forced to procure other parties to finish said contract, and paid to Materne Brothers $4,122.25 . . . . that there is no evidence showing the amount of sand and gravel hauled by . . . . these parties, and that there is not sufficient evidence to sustain the allegations that said amounts should be set off against the plaintiff, and you are, therefore, instructed to disregard said item[s]."

The evidence shows that Fiorito Bros. paid $4,122.25 to Materne Brothers, of which sum it is admitted that at least $4,000 was for hauling done by the latter firm for Lee & Paus while the contract was in force, and the evidence tends to establish that the remainder was for hauling done for Fiorito Bros. in continuing the work after the contract was breached by Lee & Paus.  Now, if we understand instruction No. 7 correctly, the court advises the jury that since there is no evidence showing the amount of sand and gravel hauled by Materne Brothers, and since there is no evidence to sustain the allegations of paragraph V, said sum of $4,122.25 should be disregarded by the jury and not considered as a set-off against the claim made by the assignee of Lee & Paus.  As it is admitted under the record in this case that at least $4,000 of this sum of $4,122.25 was a proper set-off, the trial court committed error in instructing the jury to disregard the item in its entirety.

But it is urged on behalf of respondent that whatever error there might be in instruction No. 7 was cured by the other instructions given, particularly Nos. 2 and 11.

Instruction No. 2 contained a mere recital in condensed form of the allegations of the pleadings, without comment thereon, including a statement that appellants alleged "that while Lee and Paus were hauling sand and gravel for defendants, they became indebted to Materne Brothers for trucks furnished in the work in the sum of $4,000, and on the 11th of September, 1922, they paid Materne Brothers the said sum of $4,000 . . . . "

Instruction No. 11 was as follows:

"You are instructed that defendants are entitled as an offset against any amount that might become due to Lee & Paus for their work in hauling sand and gravel any sum of money paid by them, the defendants, in payment of labor bills or material bills incurred by Lee and Paus and any sum paid for hauling sand and gravel in the construction of said highway over and above the amount for which Lee & Paus contracted to haul the same, provided that the sum paid for the finishing of the hauling of said sand and gravel was, under the circumstances, a reasonable sum."

There was only one payment made by Fiorito Bros. to Materne Brothers, and that was the item of $4,122.25. In one instruction the jury were told to disregard the whole of • this specific amount as a set-off against the claim of respondent. In other instructions the jury were advised in general terms that Fiorito Bros. were entitled to set off against respondent their payments of bills incurred by Lee & Paus, but the item of $4,122.25 was not specifically mentioned or referred to in such a manner as to inform the jury that by instruction No. 7 the court did not intend to convey that this payment should be disregarded as a set-off from any and all points of view, or that it might not be in part a valid set-off. When an instruction is in part misleading, and considered in connection with other instructions is confusing, so that it is doubtful whether the jury could have understood from the instructions that certain

evidence. could be considered by them in arriving at a verdict, and it is impossible to determine whether or not they did consider it, a new trial should be granted.

The second reason advanced by respondent is that the court erred in assuming that the jury found that ninety cents per cubic yard was a reasonable price to be paid by appellants for the hauling of the remainder of the sand and gravel necessary to fill the Lee & Paus contract, and erred also in basing an estimate of the amount of damages recoverable by appellants upon that rate without reference to certain evidence in the record to the effect that eighty cents per cubic yard was a reasonable price for such hauling. There was evidence that the ninety cents per cubic yard paid by appellants to the Cascade Investment Company for the completion of the hauling left unfinished by Lee & Paus was a reasonable price; there was other testimony that eighty cents was a reasonable price. Under such circumstances it was for the jury to say what was a reasonable price. Whether they found it to be eighty cents or ninety cents per cubic yard, we are unable to say from the record.

In view of the unsatisfactory state of the record we conclude that we are justified in ordering that the judgment be reversed and a new trial granted. Appellants recover their costs in accordance with the previous opinion.

William A. Lee, C. J., and Taylor, J., concur.

WM. E. LEE, J., Dissenting.—From a consideration of this cause on rehearing, I am unable to concur in either the original opinion or the opinion on rehearing. Since the majority opinions are based on an incorrect understanding of the facts, it is deemed necessary to state my views at length. During 1922 appellants were engaged in constructing a concrete paved highway from the city of Coeur d'Alene to the boundary line between Washington and Idaho. They contracted with Lee and Paus to haul the necessary sand and gravel for constructing the highway for sixty cents per yard. Lee and Paus furnished a $10,000 bond condi-

tioned for the performance by them of the obligations of the contract. Thereafter they assigned to respondent all sums of money to become due them. Lee and Paus abandoned the contract and quit the work, but before doing so they hauled 5,158 cubic yards, for which respondent claims payment at the contract price of sixty cents per yard, $3,094.80. Lee and Paus had become indebted to certain persons for labor and supplies. After they abandoned the work appellants engaged the Cascade Investment Company to haul the balance of the sand and gravel, and paid out certain sums for labor and supplies furnished Lee and Paus.

In paragraph five of the affirmative defense appellants alleged that, in the *completion of the contract undertaken and abandoned* by Lee and Paus, they had employed and paid Materne Brothers $4,122.25, A. L. Larson $486.50, Sam Theis $1,258.10, C. E. Deschamp $938, T. B. Laidley $581, W. D. Boyles $444.50, amounting to $7,830.35, and had also contracted with the Cascade Investment Company to haul the remainder of the sand and gravel necessary to complete the work. They alleged that the amounts paid out by them for services and supplies furnished Lee and Paus and to haul the balance of the sand and gravel exceeded by more than $10,000 (the amount they received on the bond), the amount for which Lee and Paus had contracted to do the work, and that they were therefore not indebted to respondent in any sum whatever.

Both sides admit that the evidence shows that the total amount of sand and gravel necessary for the construction of the highway was 34,741 cubic yards and that of this total Lee and Paus delivered 5,157 yards. There was furnished appellants, therefore, to complete the work after Lee and Paus quit, 29,584 yards. The total amount paid to the Cascade Investment Company was $26,755.20, which at ninety cents per yard would pay for hauling 29,728 yards. The sand admitted to have been hauled by Lee and Paus and that admitted to have been hauled by the Cascade Investment Company equals (and as a matter of fact exceeds by 144 yards) the total amount required for the entire

work. This conclusion is important in view of certain contentions made by appellants which I am about to notice.

In paragraph five of the affirmative defense, as has already been shown, in addition to the payment to Cascade Investment Company, it was alleged that a total of $7,830.35 was paid various persons to complete the work after Lee and Paus had abandoned it. There was no evidence showing the amount of sand and gravel hauled by any of the persons who were alleged to have been paid $7,830.35. The court's instruction to the jury to disregard these items was justified in view of the fact that Cascade Investment Company was paid for hauling all the sand and gravel required to construct the highway, not hauled by Lee and Paus. If appellants paid others for doing the same work for which the Cascade Investment Company was paid, they cannot charge such excess payments to Lee and Paus.

During the trial of the action appellants attempted to prove that they had paid to Materne Brothers $4,122.25 *for services rendered Lee and Paus while they were hauling* the sand and gravel. This was objected to on the ground that it was not within the issues and the objection was sustained. Thereupon appellants amended paragraph four of their answer and thereby alleged that *while Lee and Paus were hauling sand and gravel they became indebted to Materne Brothers* in the sum of $4,000 which appellants were forced to and did pay. The fact was not seriously controverted. The court instructed the jury that *while Lee and Paus were hauling sand and gravel,* they became indebted to Materne Brothers in the sum of $4,000, and that appellants had paid Materne Brothers said sum of $4,000, no part of which had been paid by Lee and Paus; and in instruction number eleven the jury was told " . . . . that defendants were entitled as an offset against any amount that might become due to Lee and Paus for their work in hauling sand and gravel any sum (paid by defendants) . . . . in payment of labor bills or material bills incurred by Lee and Paus . . . . " It is plain to my mind, therefore, that the jury was properly instructed with respect to the amounts they should

allow defendants as an offset. The instructions, as a whole, were plain and the jury could not have been misled. The testimony was conflicting as to whether or not ninety cents per yard, paid by appellants to the Cascade Investment Company for hauling the remainder of the sand and gravel, was a reasonable sum for such work. The jury was justified in finding that ninety cents per yard, testified to by witnesses for appellants, or eighty cents, testified to by witnesses for respondent, was a reasonable sum for such work. On either basis the verdict may be sustained, conceding at the same time that the jury allowed the $4,000 item as an offset.

The majority holds that the court erred when it instructed the jury to disregard the item of $4,122.25 claimed in paragraph five of the affirmative answer. Any other instruction with respect to this item would have been erroneous. The trial court would have plainly erred had it instructed the jury in accordance with the views of the majority; and such an instruction, if followed by the jury, under the admitted facts in this case, would have resulted both in allowing appellants an offset of $4,000 for services rendered by Materne Brothers to Lee and Paus while they were performing the contract, and in allowing another offset of $4,000 for the services rendered by Materne Brothers after Lee and Paus quit. Four thousand dollars was all that was ever earned or paid Materne Brothers, and the trial court instructed that such sum should be allowed.

The trouble with the majority is in not distinguishing between the *$4,122.25,* alleged to have been paid to Materne Brothers (in paragraph five of the affirmative answer) for sand and gravel hauled *after Lee and Paus quit the work,* and the *$4,000* alleged to have been paid to Materne Brothers (the amendment to paragraph five of the affirmative answer) for hauling sand and gravel *before Lee and Paus quit the work.* The first of these the court took from the jury because there was no evidence to sustain it and also because the Cascade Investment Company was paid for hauling all the sand and gravel not hauled by Lee and Paus.

The second item the court properly left with the jury and instructed that it should be allowed appellants as an offset. I submit also the judgment is reversed by the majority on a point not raised by appellants. Appellants admit that instruction number seven, in so far as it told the jury to disregard the item of $4,122.25, was proper. On page twenty-four of appellants' brief, in discussing instruction number seven, the attorneys for appellants, with respect to the item of $4,122.25, say " . . . . we have no fault to find with the instruction . . . . "

Givens, J., concurs in the dissenting opinion of Justice Wm. E. Lee.