Bahrenburg v. Fruit Co.

BAHRENBURG et al., Respondents, v. CONRAD SCHOPP FRUIT COMPANY, Appellant.

St. Louis Court of Appeals, December 17, 1907.

1. **ACCORD AND SATISFACTION: Conditional Tender: Acceptance.** Where a debtor in good ·faith disputed the amount claimed by his creditor to be due and tendered his check to the creditor for the amount admitted to be due, if the check was tendered on condition that it was in full payment of the amount due and the creditor cashed it, this would constitute an accord and satisfaction, although the creditor protested that he did not take the check in full payment, but would give the debtor credit for the amount.

2. ———: ———: **Surrounding Circumstances.** And where the debtor in such case tendered his check saying that it was "in payment of the balance shown by his books to be due" to the creditor, this did not show conclusively that it was a tender in full payment, but statements accompanying the check could be taken into consideration to determine whether such was the intention.

3. ———: ———: ———: **Jury Question.** And where in such case the accompanying statements and circumstances were such that an inference might be fairly drawn either that it was a tender in full payment or that it was not a tender in full payment, the question of whether it was an accord and satisfaction was properly submitted to the jury.

4. ———: ———: **Conditional Acceptance.** Where the debtor tendered a check for a less sum than was claimed to be due under circumstances tending to show that the tender was made in full payment and where the creditor wrote the debtor that he would not accept it in full payment but would give credit for the amount, to which the debtor made no reply, and three months afterwards the creditor cashed the check, this was a circumstance to be considered in determining whether an accord and satisfaction had occurred.

Appeal from St. Louis City Circuit Court.—*Hon. Jas. H. Withrow,* Judge.

AFFIRMED.

*Kinealy & Kinealy* for appellant.

The instructions in the nature of demurrers to the evidence asked by the defendant should have been given. Coal Co. v. St. Louis, 145 Mo. 651; Lightfoot v. Hurd, 113 Mo. App. 612; Andrews v. Stubbs C. Co., 100 Mo. App. 599; St. Joseph Sch. Bd. v. Hull, 72 Mo. App. 403; Adams v. Helm, 55 Mo. 468; Mills v. Summer, 53 Hun 392.

*Bishop & Cobbs* for respondent.

Trial court did not err in overruling the demurrer to the evidence. 1. Because the plea of accord and satisfaction is a technical defense and the burden of proving it rests upon the defendant. Griffith v. Creighton, 61 Mo. App. 4; Oil Well Supply Co. v. Wolf, 127 Mo. 625. 2. Because the payment of a part of an account, even if the amount due is in dispute, will not constitute a settlement of the entire account, unless that payment is accompanied by such acts and declarations as amount to a condition that the money, if accepted at all, must be accepted in full settlement. Perkins v. Headley, 49 Mo. App. 562; Dry Goods Co. v. Goss, 65 Mo. App. 55; Mfg. Co. v. Heinz, 120 Mo. App. 477; Preston v. Grant, 39 Vt. 201; Widener v. Tel. Co., 51 Mich. 271; Van Dyke v. Wilder, 66 Vt. 579; Pettlitzer v. Wesson, 8 Ind. App. 478; Curran v. Rummel, 118 Mass. 482; Fuller v. Kemp, 33 N. E. 1034.

STATEMENT.—Plaintiffs are partners doing business in the city of New York and defendant is a corporation doing business in the city of St. Louis. On March 12, 1904, defendant bought from plaintiffs two carloads of sauerkraut of fifty-five casks each, or one hundred and ten casks in all, at $9 a cask, or a total of $990. The petition alleges that on December 18, 1905, defendant paid plaintiffs $370.35 on account of the purchase price of the kraut, leaving a balance of $619.65

due thereon, for which, with interest from March 15, 1904, judgment was prayed. The answer contains two counts and admits the purchase of the kraut as stated in the petition. The first count avers defendant had been purchasing kraut prior to the purchase in controversy and that on March 11, 1904, plaintiffs offered to sell defendant two carloads of kraut of fifty-five casks each of the same kind defendant had theretofore been buying, and the parties agreed on a purchase of two carloads at nine dollars a cask in the city of New York, which was the fair market value of the product of the season of 1903; that all the kraut previously purchased from plaintiff had been good merchantable kraut; that it was understood between the parties the purchase in controversy was to be of the season of 1903; that fifty-five casks of the purchase of March, 1904, were of said character and quality, but the remaining fifty-five casks were not of good quality or the product of the season of 1903, but were totally worthless for any purpose. The second count or paragraph of the answer avers that on receipt of the fifty-five casks of worthless kraut, defendant was compelled to pay freight thereon from New York to East St. Louis, amounting to $115.18, and for drayage from East St. Louis to St. Louis on the same of $8.25; and afterwards, when the kraut was discovered to be worthless, other drayage amounting to $8.25 for hauling the same to the river and dumping it; that the total amount of all expenses incurred on account of the worthless kraut was $124.65; that defendant owed plaintiffs $495 for the carload of good kraut and, deducting from said sum the $124.65 paid by defendant on account of the worthless kraut, there remained due from defendant to plaintiffs the sum of $370.35; that when defendant discovered one carload was spoiled and worthless, a controversy arose between the parties as to the liability of defendant to pay for said worthless kraut, and as to its right to hold plain-

tiffs for the expense incurred for freight and drayage on it; that during the pendency of said controversy, on or about September 7, 1904, defendant sent to plaintiffs a New York draft for $370.35 in full settlement of the controversy; that said draft was received and cashed by plaintiffs, which closed the dealings between the parties. The reply was a general denial of the new matter contained in the answer. All the dealings between these parties were conducted by correspondence; either by letter or telegram. The correspondence established and the pleadings admitted defendant purchased two carloads of kraut of fifty-five casks each at nine dollars a cask; and this kraut was shipped about March 12, 1904. It was agreed one carload was good merchantable kraut and no complaint was made about it. The testimony for defendant tends to prove that when the other carload was received and the contents of the cask examined, it was found to be rotten and utterly worthless and had to be dumped into the Mississippi river; that not a pound of it was fit for use; further, that if the kraut had been the product of the year 1903 and in good order when it was shipped from New York, it could not have spoiled by the time it reached St. Louis, or was inspected there. The kraut was imported from Europe by a firm styled White & Company, and sold by plaintiffs on commission direct from the ship; that is to say, sales had been made to purchasers in different parts of the country and when the ship arrived in port, the kraut was loaded from the ship to cars and sent to plaintiffs' customers. Plaintiffs' contention was, and their evidence tended to prove, all the kraut was in perfect condition when it left New York, after which it was, according to the terms of sale, at defendant's risk; that the carload over which the controversy arose was not opened and inspected by the defendant until eleven days after it had reached East St. Louis, to-wit:

April 2nd, and that if it was spoiled this occurred on account of the long delay in receiving it and opening it at so late a season of the year; that is to say, the latter part of March. The good kraut was shipped in car No. 1867 over the Delaware, Lackawana and Western Railroad, and the spoiled kraut was shipped in car No. 11671 over another route. As soon as the condition of the latter kraut was discovered by defendant, to-wit: April 2, 1904, it telegraphed plaintiffs the kraut was spoiled, worthless, evidently two years old, unmarketable and unacceptable, and for plaintiffs to wire what disposition should be made of it. Plaintiffs telegraphed back the kraut had reached its destination ten days before; that the quality was exactly as quoted and plaintiffs would not take it back. On the same day defendant telegraphed, it wrote that the kraut was ruined and wanted to know what disposition to make of it. Plaintiffs replied to said letter reiterating the position taken in their telegram, that the kraut was in good condition when shipped and insisting defendant should bear the loss. Defendant responded by wire that ignorance and bulldozing would not do; that the kraut was not what had been purchased and was subject to plaintiffs' order. Plaintiff replied by letter that they had acted in good faith as commission merchants and stood by what they had written; that they had shown defendant's correspondence to W. N. White, the real principal in the transaction, whose letter was inclosed; that plaintiffs hoped there would be no further unpleasantness and accepted defendant's check for the full amount of the bill. On April 16 a telegram was sent by plaintiffs to defendant, saying the kraut was defendant's as White refused to do anything in the matter; that defendant would be held responsible, but plaintiffs would be willing to lose their commission of $50. The telegram further stated that this position was final. On April 19th plaintiffs wrote that they had taken

their final position; that the kraut belonged to defendant; that it had been for days at destination when the latter claimed the goods had not been received; that plaintiffs' responsibility ceased when the goods were shipped; that plaintiffs were willing to lose their commission, but as defendant refused to accept that proposition, there was nothing left but for plaintiffs to collect the account, which it would proceed to do.   On April 16th prior to said letter, defendant had telegraphed plaintiffs that White and his kraut did not concern defendant as the latter had not received what it bought; that the kraut was subject to plaintiffs' order and plaintiffs might take this as final.   It should be stated that on March 15, 1904, a draft or bill of exchange had been drawn by plaintiffs on defendant for the two carloads of kraut, to-wit; $990.   This draft came to the National Bank of Commerce of St. Louis, and when presented to defendant for payment it seems the kraut had not yet been delivered.   The defendant did not pay it and it was returned to plaintiffs unpaid on April 8, 1904.   Subsequent to the acrimonious correspondence which we have abridged, and other letters and telegrams of a similar tenor which passed during April, nothing transpired between the parties, so far as the record shows, until September 7, 1904, when Kinealy & Kinealy, a firm of attorneys acting for defendant, sent a bank cashier's check to plaintiffs for $370.35.   This check is as follows:

"GERMAN AMERICAN BANK.

No. 217166.

"St. Louis, Mo., Aug. 12, 1904.

"Pay to the order of Conrad Schopp    $370.35
Fruit Co. three hundred and seventy and
seventy and 35-100 dollars.

"L. F. PLACKE,
"Assistant Cashier."

The check was inclosed in the following letter:

"St. Louis, Mo., Sept. 7th, 1904.
"J. H. Bahrenburgh Bro. & Co.,
"113 Murray St., New York.

"Gentlemen: Inclosed please find New York draft
for $370.35 endorsed by the Conrad Schopp Fruit Co.,
payable to your order. This draft is from the Conrad
Schopp Fruit Co. in payment of the balance as shown by
their books to be due you as per statement herewith inclosed.

"Yours truly,
"KINEALY & KINEALY."

Inclosed with this letter were these exhibits or
statements:

"CREDIT VOUCHER.
"OFFICE OF CONRAD SCHOPP FRUIT CO.,
"N. W. COR. THIRD & WASH STS.,

St. Louis, Mo., Aug. 11, 1904.
"J. H. Bahrenburg Bro. & Co.,
New York City, N. Y.

"We credit your account as follows:
Cr.
"By Kraut No. 1867   D. L. W. Your inv.
3-02 marked B. M. S. 55 casks 9.00              495 00
Dr.
To our invoice 7-20-04 next attached    $108.15
freight we paid on car 11671-M. L. D.

"Drayage and transfer hauling car No.
11671 from E. St. Louis to St. Louis      8.25
"Drayage hauling to dump. Kraut
marked S. S. Holland                      8.25  $124.65

$370.35

"We enclose N. Y. Exchange to balance.

"CONRAD SCHOPP FRUIT CO.
"St. Louis, Mo., July 20th, 1904.
"J. H. Bahrenburg Bro. & Co.,
New York City, N. Y.
1904
April 9th. As per bill rendered:
To freight paid on car rotten kraut
$11671 M. D. L., marked S. S. Hol-
land                                      $108.15
Transfer & drayage on same from E.
St. Louis to St. Louis, 55 casks at
15c per cask                              8.25
June 29th. Hauling to dump by 'gar-
bage hauler' as per receipt attached
these 55 casks marked 'S. S. Holland'
15c per cask                              8.25

$124.65"

On receipt of the foregoing documents, plaintiffs
wrote the following letter:

"Sept. 9th, 1904.
"Mess. Kinealy & Kinealy, Attys.,
St. Louis, Mo.
"Gentlemen: Replying to your favor of the 7th,
we are very much surprised to receive a draft from you
for $370.35 on account of Conrad Schopp Fruit Co. The
same however does not pay our account of $990, which
is long past due. Therefore we will not accept same

and herewith inclose you all papers except check, which we shall hold, and which we are perfectly willing to place to the credit of said Conrad Schopp Fruit Co's. account, thus reducing the remainder of the account. As above stated, this account is past due and in due season there is no question but what the same will be paid and we are not afraid of Conrad Schopp Fruit Co.

"Very truly yours,

"J. H. BAHRENBURG BRO. & Co."

There was no communication between the parties after the date of the letter last quoted; but on or about December 15th, some three months later, plaintiffs cashed the draft or cashier's check.

GOODE, J. (after stating the facts).—It was the contention of defendant's counsel below, and is their contention here, that acceptance of the cashier's check under the circumstances stated, constituted an accord and satisfaction and barred a recovery by plaintiffs of the balance alleged to be owing to them. The issue of whether there had been an accord and satisfaction was submitted to the jury by the court below in instructions and found in plaintiffs' favor. But it is insisted by defendant's counsel that, as all the facts on which the defense of accord and satisfaction depended, were in writing, there was no issue for the jury; but the effect of what was done amounted in law to an accord and satisfaction. We agree with counsel for plaintiffs the burden was on defendants to make good this defense; but the point to be decided is whether or not the evidence conclusively established the defense. It is said for the plaintiffs it did not; because, there was no proof the draft for $370.35 was either tendered by defendant or accepted by plaintiffs in full settlement of the account. It will be observed the letter of Kinealy & Kinealy inclosing the draft, did not say it was

sent as payment in full of plaintiffs' demand against defendant, but that it was in payment of the balance shown by defendant's books to be due plaintiffs as per the statement inclosed. Standing alone that letter would by no means be conclusive that the check was tendered on the condition it must be accepted by plaintiffs in full payment or not accepted at all; and we might even go further and say the letter by itself would hardly justify the inference of a tender on this condition. But the letter must be taken in connection with the statement or statements to which it referred and read in the light of what previously had transpired between the parties. We must determine whether the correspondence and documents permit no inference save that the check was tendered in full payment of the disputed demand and plaintiffs knew it was. If that is the effect of them, the cashing of the check constituted an accord and satisfaction which bars recovery, notwithstanding plaintiffs' protest that they would not take the check in full payment, but were willing to give defendants credit for the amount of it on the account. [Pollman Coal Co. v. St. Louis, 145 Mo. 651, 659, 47 S. W. 563.] The question is often extremely close, as to whether the tender by a debtor of less than the amount claimed by his creditor, is couched in such language or made under such circumstances, that the creditor must have known the tender was on the condition that it be accepted in full payment, so an acceptance would be tantamount to assenting to the debtor's terms of settlement and work an accord and satisfaction; which is really an agreement to accept in satisfaction of a disputed or unliquidated demand, something different from what was claimed. The dispute between these parties was evidently in good faith on both sides and not a mere attempt by defendant to evade payment of a known liability. Hence, there is present the first condition essential to a valid compromise. [Pollman Coal Co. v. St. Louis, supra; 1 Cyc.

367.] There is no difficulty when the parties formally agree; but when the accord and satisfaction is to be deduced, as in the present instance, partly from conduct, there is often much difficulty. This is especially so when it is argued there is no room for a jury issue. It is argued for plaintiffs that the letter of the attorneys did not say the draft was sent in full payment. No doubt in many instances the presence or absence of such an expression is a controlling fact. But it is not absolutely necessary, in order that an accord and satisfaction may arise, for the debtor to declare, in connection with his tender, it is meant to be in full payment. Circumstances may show as conclusively as language, this was meant and that the parties so understood the matter. [Perkins v. Headley, 49 Mo. App. 556, 562.] The opinion in that case correctly states the law in regard to the present case, when it says that if there is a controversy between a creditor and debtor as to the amount due, and the debtor tenders the amount which he claims to be due, but tenders it on the condition that the creditor accept it in payment of the full demand and the creditor does accept it, this will be a full satisfaction as a conclusion of law; the principle being that one who accepts a conditional tender assents to the condition; that he cannot take the money and reject the terms on which it is tendered, if the party making the tender announces to him he will not pay on any other condition. Though to our minds the evidence in the present cause is cogent in favor of the conclusion that the tender was in settlement of the dispute and was so understood by plaintiffs, yet we do not deem this so absolutely clear we can declare no other inference could fairly be drawn. The matter had been placed by defendant in the hands of attorneys who wrote the letter, and there was no express statement that the tender was in full payment. The inference may be deduced that it was a tender of what defendant admitted to be

due, so that in case a law suit followed, plaintiffs would be thrown into the costs if they did not recover more. Additional strength is given to this view by plaintiffs' letter in reply, which might be interpreted as meaning they were surprised that defendant had concluded to make a payment and, were not afraid of defendant's solvency or fairness, but expected it would pay the balance claimed in time. Moreover, plaintiffs refused to take the check in full payment, but said they were willing to credit the amount of it on the account. It was not shown that defendant objected to this being done. To meet such a proposal with silence and then follow with a claim of settlement, is a policy not to be encouraged; as it would tend to entrap creditors into an accord and satisfaction when none was intended. In Potter v. Douglas, 44 Conn. 541 (a case cited and approved in St. Jos. School v. Hull, 72 Mo. App. 403), it was said there was a material difference between receiving money duly tendered and receiving it when offered in full of an unliquidated claim. In the one case there is no condition attending the tender, and in the other there is a condition which the party to whom the money is offered must comply with or reject the money. In the one case the money may be accepted and the creditor sue for more, if more is due him, but in the other case the offer being in full of the claim, if the money is received, the law regards it as in full and the party can recover no more. This reasoning, of course, applies as well to a disputed claim on account as to one for unliquidated damages. If a debtor who pays a less sum than is claimed by his creditor, wishes to put the latter to his election of accepting the amount paid in full satisfaction or rejecting it, he must express his proposal in terms so plain that a court can declare there was an accord and satisfaction. And a court might do this even though the intention to offer in full payment was not expressed in clear words, if the facts pointed unmistakably to such

an intention.   But in most such instances the question
of what the debtor intended and of how the creditor was
bound to understand him, would be one of fact for the
jury; and by the weight of authority this would be so
under the facts of the present case.   As already indi-
cated, the silence of a debtor after he is notified the credi-
tor will not accept the sum proffered in full payment
but is willing to give credit for it, is a circumstance to
be considered in determining whether or not an accord
and satisfaction occurred; and courts have held that it
does not occur because the minds of the parties did not
meet in an agreement that the demand should be satis-
fied by the payment.   [Miller v. Holden, 18 Vt. 337.]
So in Gassett v. Andover, 21 Vt. 342, it appeared that
after suit was brought, the defendant had tendered a
sum in full of all the plaintiff's demands, that the latter
received the sum, protesting it was not enough, but
taking it and saying he would place it to the defendant's
credit.   It was not shown the defendant expressed
any dissent from the plaintiff's proposal and the court
held it might be inferred  he  assented to it.    In
Preston v. Grant, 34 Vt. 201, the payment was accom-
panied by a statement that the amount was tendered as
the balance due on the notes in dispute.   The attorney
of the bank which held the notes, took the amount, say-
ing he would take it to the bank "and they might do as
they were a mind to."   The amount was afterwards
indorsed on the note.   It was held the words of the
debtor should be construed to mean, that he offered to
pay what he admitted to be due, but did not offer the
payment on condition that, if accepted, it should be in
full satisfaction of the debt.   Still more apposite is the
case of Pottlitser v. Wesson, 8 Ind. App. 472.   A car-
load of bananas was purchased and afterwards payment
was refused on the ground the fruit was not of the
quality sold.   As the seller refused to take the bananas
back, the purchasers sold them for the seller's credit and

transmitted the proceeds.   The draft was accompanied by the following letter and invoice:

"(Letter) : 'Gentlemen—Enclosed you will find our check on Hamilton National Bank in settlement for car of bananas shipped here and held here subject to your order, which we have sold for your account.'

"(Invoice, omitting figures) :   'Sirs—We herewith hand you account sales of 550 bunches bananas received May 19, 1891, and enclose you check  for $550.70, net proceeds of same.   We trust the same will prove satisfactory and to hear from you again.   We remain, etc."

The seller received the check and wrote the buyers it would place the amount to their credit and had put the account in the hands of a collection agency, whose attorney would see them about the balance due. No reply was made to this letter.   The court, after reviewing several cases, held the letter stating the check was transmitted in settlement for the car of bananas, did not necessarily attach the condition that, if the draft was accepted it must be in full payment.   In Tompkins v. Hill, 145 Mass. 379, the facts and the decision thereon will appear from this excerpt from the opinion:

"The plaintiff had a claim against the defendant for one-third of the net profits of an enterprise in which they were jointly engaged.   He sent a letter requesting the defendant to render an account.   The defendant, in reply, sent a letter enclosing an account, in which he credited the plaintiff with one-third of the profits and charged him with an item of $260, claimed to be due for the defendant's services, and also enclosing a check for the balance of the account thus stated.   The plaintiff credited the check to the defendant on account, but he did not agree to accept it in satisfaction of his claim. On the contrary, he forthwith demanded payment of the said amount of $260, of the defendant, and, upon his refusal to pay at once, brought this suit.   The case stands, in legal effect, the same as if the defendant had

presented his account and check in a personal interview, and the plaintiff had refused to agree to the account, or to accept the check in full satisfaction. It shows no agreement to compromise, and no accord and satisfaction; and the plaintiff is entitled to recover the balance due him."

To the same effect is Curran v. Rummell, 118 Mass. 482. Rather opposed to those authorities is the decision in Hills v. Frank, 53 Hun 392. Every case to which we have been cited in this state in which it was held an accord and satisfaction arose from the acceptance by a creditor of a smaller sum than he claimed, contained the fact that the payment was offered in full satisfaction or discharge of the demand. [Pollman Coal Co. v. St. Louis, supra; McCormick v. St. Louis, 166 Mo. 315, 335, 65 S. W. 1038; St. Jos. School Board v. Hull, 72 Mo. App. 473; Adams v. Helm, 55 Mo. 468; Andrews v. Contracting Co., 100 Mo. App. 599, 75 S. W. 178.] We hold the issue of whether there had been an accord and satisfaction was properly submitted to the jury.

This disposes of the chief assignment of error, although the rulings on the requests for instructions are all challenged. We have examined these criticisms but think the case was well instructed. The evidence was very conflicting as to whether the kraut was of the product of 1903, when it spoiled, and who was to blame for its condition when opened, and these issues were for the jury.

The judgment is affirmed. All concur.