(No. 6842.   December 20, 1940.)

PHIL J. CLAY, Appellant, v. BERNYCE EWING ROSSI, Executrix of the Estate of HERMAN J. ROSSI, Deceased, Respondent.

[108 Pac. (2d) 506.]

J. Ward Arney and Clay V. Spear, for Appellant.

James A. Wayne and Chas. E. Horning, for Respondent.

AILSHIE, C. J.—Appellant, P. J. Clay, a resident of Los Angeles, California, and agent of the United States Fidelity & Guaranty Co., Herman J. Rossi of Wallace, Idaho, general agent of the Aetna Life Insurance Co., and Bell and Malcom, members of the contracting firm of Orino, Bell and Malcom, met at the Multnomah Hotel, Portland, Oregon, Sept. 17, 1934, for the purpose of executing the necessary contracts and surety bonds required by the United States government on "Railroad relocation on Contract No. 21, for the Bonneville Dam." Clay and Rossi had never met before and upon introduction Rossi presented his card to Clay, reading as follows: (hereinafter referred to as Exhibit No. 1).

| |
|---|
| HERMAN J. ROSSI |
| General Agent<br>Aetna Life Insurance Co.<br>Accident and Liability<br>Department          Wallace, Idaho |

It appears that the government required two surety bonds on finally awarding the contract to Orino, Bell and Malcom and that Clay and Rossi were there for the purpose of executing the bonds on behalf of their respective companies. It was agreed that Rossi should appear as the broker of record and thereupon he wrote a memorandum agreement on Bell's letter paper (hereinafter referred to as Exhibit 2) as follows:

"RALPH A. BELL
General Contractor
117 West 115th Street
LOS ANGELES
TWinoaks 5815

Portland, Or.
Sept. 17th 1934

We hereby designate Herman J. Rossi the Agent who is in complete authority to represent us in our required bonds on Contract 21 Bonneville Dam.

This is to be worked in conjunction with P. J. Clay of Los Angeles, agent of the U S F & G. Co. who is to share equally on the Commission on all bonds in connection in this matter.

ORINO BELL & MALCOLM

By C. T. MALCOM

I acknowledge receipt of this
notice and will pay to P. J. Clay
as per above agreement
9/17/34   HERMAN J. ROSSI"

which memorandum was signed by the contractors and also by Mr. Rossi. After the contract was let and the surety bonds were written, on October 17, 1934, Mr. Rossi wrote to one Mansfield, also an insurance agent, admitting his (Rossi's) liability to Clay (Rejected Ex. 3) and, among other things, said:

"I am stuck to pay 50% of the commission to Clay. Bell and Malcom both were present when the *agreement was made in writing*. If it develops that we eventually will change sureties, I would then try to have you handle the new sureties as your clients and in that way, edge Clay out. If I should stay in it on the new surety, *naturally Clay would stick me on the original agreement as surety companies are not mentioned in our agreement, simply the commission*. Personally, I prefer to make my word 'Good' to Clay or any one. Life is pretty short and chickens invariably come home to roost. *Clay was Bell's man, not mine by a long shot*." (Italics supplied.)

Thereafter, November 21, 1934, Rossi wrote to appellant, in which he states, among other things, as follows:

"I may say at this time that my verbal instructions are that no commission whatever be paid you, the firm, particularly Ralph Bell, figuring that both you and Johns have done your utmost to compel them to pay 1½% and that you two have blocked them from obtaining other companies to substitute, which Mansfield was able to finally offset.

"Without being able to definitely complete with Mansfield and his Attorney, and under specific verbal instructions from each member of the above firm with whom I consulted at their Bonneville Office, they demand that I do two things, eliminate them from an action in Court and release them from the Glens Falls applications and agreements and cut you out completely, if such is necessary.

"If and when the premium is collected, I propose to pay you 5% commission on the entire contract bond and 10% commission on the indemnity bond."

November 27th appellant answered Rossi's last mentioned letter, in which he discussed the facts and circumstances in detail, and concluded his letter as follows:

"You signed the agreement and agreed to pay me 50% of the commission on all bonds and I expect to have this agreement lived up to to the letter. I can prove that I rendered valuable services in securing the bond for Orino, Bell & Malcom as the files of the U. S. F. & G. and the Aetna will show and the agreement already referred to was given in consideration thereof. It is quite apparent that you have been making every effort to have this agreement repudiated and eliminate me from the picture, by a minor consideration of 5%, but it is my intention to stand on my rights and I will expect payment of 50% of the commission on both the contract and indemnity bonds." (Exhibit No. 6.)

The total premium commission, as stated by the complaint, amounted to $2,763.75, one-half of which Clay claimed. He received $498.12, leaving a balance of $883.75. Later there was an additional commission earned amounting to $493.74, one-half of which was $246.87, or a total claimed by Clay of $1130.62. December 15th Rossi sent appellant a draft on the

Crocker First National Bank of San Francisco for $498.12 and attached to the check a document reading as follows:

"ORIGINAL WALLACE, IDAHO,

Dec 15 1934 193—

ROSSI INSURANCE & INVESTMENT CO.

In Account With

Phil J. Clay,

714 South Hill,

Los Angeles, California.

Voucher No. 1480

Check No. ——

| | | |
|---|---|---|
| Commission Orino, Bell, Malcom Co., per letter Nov. 21st, 1934: | | |
| Contract Bond Premium $8462.50 @ 5%.. | 423 | 12 |
| Indemnity Bond Premium   750.00 " 10%. | 75 | 00 |
| | 498 | 12 |

$498.12

Date ——————

Received Payment In Full for above Amount

Signed ————————————

By ————————————

Approved:

Herman J. Rossi

Please Date, Receipt and Return Promptly"

Appellant cashed the draft but did not sign or return the receipt. It does not appear what took place between the parties from that time on until Mr. Rossi's death about March 13, 1937. May 21, 1937, appellant presented his claim in due form to the executrix for allowance and the same was rejected, and subsequently this action was commenced to recover judgment against the estate. Judgment of nonsuit and dismissal was entered against appellant and this appeal is from the judgment.

Two specifications of error are made for a reversal of the judgment: (1) That the court erred in rejecting appellant's proffered exhibits Nos. 1, 2, and 3, hereinabove identified and (2) That the court erred in granting motion for nonsuit and dismissal of the action.

We think the court was in error in his ruling on each of the exhibits, Nos. 1, 2, and 3; they should have been admitted. No. 1 identified Mr. Rossi as the general agent and representative of the insurance company and did not inform the appellant that Mr. Rossi was acting as merely the agent of the Rossi Insurance and Investment Co., so that the exhibit might very well have some influence on the jury in determining whom he was representing. Exhibit No. 2 was the crux of appellant's case. While signed only by the contractors on the one hand and Mr. Rossi on the other, it was in fact a written contract, imposing duties and conferring benefits on, and for the benefit of, three parties.

The contractors had to procure and furnish two surety bonds on their contract with the government and it seems quite evident they had decided on procuring the bonds from the companies, *represented, one each, by Clay and Rossi*. They contracted for Rossi as agent to represent them in procuring the "required bonds on Contract 21 Bonneville Dam". They further made it a condition of that appointment that "P. J. Clay of Los Angeles, agent of the U S F & G Co. . . . . share equally on the Commission on all bonds in connection in this matter."

In other words, while Rossi was to be the authorized spokesman for the contractors, in arranging for and procuring these bonds and satisfying the government authorities, *both he and Clay* were to share equally in the commission realized from writing these bonds. It was made one of the conditions of the employment that Rossi was to work "in conjunction with P. J. Clay . . . . agent of the U S F & G. Co." Rossi fully recognized this fact in his letter to Mansfield, when he said:

"I am stuck to pay 50% of the commission to Clay . . . . Personally, I prefer to make my word 'Good' to Clay or anyone. . . . . Clay was Bell's man, not mine by a long shot." Exhibit 2 is a contract in writing; true it does not state *how*

*much* commission shall be divided, for the obvious reason that the commission had not yet been earned or ascertained, but the contract does say that the division shall be *"on all bonds in connection in this matter."*

In two recent cases (*Hubbard v. Ball*, 59 Ida. 78, 81 Pac. (2d) 73, and *Dowd v. Dowd's Estate*, 62 Ida. 157, 108 Pac. (2d) 287), we have considered the effect of the 1927 amendment (1927 Sess. Laws, p. 67), to sec. 16–202, I. C. A., and it will, therefore, be unnecessary for us to further consider that statute here.

The main contention made by respondent in support of the judgment herein is as follows:

"Upon plaintiff's acceptance of draft for $498.12 on December 15, 1934, the account between Clay and the Rossi Company became an account stated, and upon Clay's retention and cashing of draft, there was an accord and satisfaction."

If that contention is correct, of course it would be sufficient to support the judgment and would prevent any recovery on the part of appellant.

In the first place, appellant contends, and so testified, that he didn't know anything of the Rossi Insurance & Investment Co. until receipt of the check, and that all of his dealings were with Mr. Rossi individually. The statement, however, which accompanied the draft, as above set out, though made some months after the contract was entered into, shows that it was made by the Rossi Insurance & Investment Co., so that there was, on that issue at least, a question for the jury to determine, and that is the reason why Exhibit 1 should have been admitted.

It will be observed that the statement (Ex. 4) merely set forth what the draft was for:

One item, "Contract Bond Premium $8462.50 @ 5%";
the other item, "Indemnity Bond Premium 750.00 " 10%".

There is no place on the statement or the receipt attached, saying that the draft was intended as a full and complete payment of all account between the parties. It will be observed that the receipt attached was simply a blank to be filled in, reciting, "Received Payment in Full for Above Amount." That of course, if taken as an assertion or notice

coming from the debtor to the creditor, is not a notice that the debtor intends the receipt and acceptance of the draft to be *in full satisfaction of all accounts* between the parties, or that the creditor, by accepting it, would be waiving any further demand against the debtor. It is simply a receipt for the ''amount'' paid.

Here was a case where the debtor apparently did not deny all liability whatever but admitted liability in at least the amount covered by the check; whereas, the creditor claimed a much larger sum under the original contract.

The authorities seem to be quite uniform to the effect, that in order for the acceptance of a check to amount to an accord and satisfaction, where it is for a lesser sum than is claimed by the creditor to be due, the conditions must be made plain, definite and certain by the debtor that he is giving such check in complete settlement and satisfaction of all account between him and his creditor and that acceptance thereof shall close the account or controversy. (1 Am. Jur., pp. 223–226, secs. 22–25.) The rule is very succinctly stated by the Supreme Court of Kentucky in *Sanders v. Standard Wheel Co.*, 151 Ky. 257, 151 S. W. 674, as follows:

''The tender of a sum less than the contract price, in settlement of a disputed claim, must be accompanied with a statement, not which may be understood by the creditor as intended to be in full settlement and satisfaction of the claim, but which must be so understood by him. That is, the statement must be so clear, full and explicit that it is not susceptible of any other interpretation. To hold otherwise would put it in the power of a sharp, shrewd business man frequently to take advantage of the ignorant, uneducated, or unwary, and open the way, in the business and commercial world to the perpetration of frauds rather than the honest settlement of disputes.'' (See note commencing on page 953 of Ann. Cas. 1915A; 1 Am. Jur., p. 224, sec. 23n.)

In *Pidcock v. Williams*, 214 Mo. App. 248, 259 S. W. 899, 902, the Court of Appeals of Missouri, speaking to the same question, said:

''A simple tender of a check in payment of the 'balance' shown by an account, accompanying the tender, to be due to the creditor does not of itself show conclusively that the

check was tendered on the condition that it must be accepted in full payment of the creditor's claim. (*Bahrenburg v. Fruit Co.*, 128 Mo. App. 526, 107 S. W. 440; 1 Corpus Juris, 559; 1 R. C. L. 195.) Neither does the mere fact that the creditor receives less than the amount of his claim, with knowledge that the debtor claims to be indebted to him only to the extent of the payment made, conclusively and as a matter of law establish an accord and satisfaction. *Perkins v. Headley*, 49 Mo. App. 556." (Followed in *Childs v. St. Louis B. & B. Co.*, (Mo. App.) 271 S. W. 859, 861.)

In *Lovekin v. Fairbanks, Morse & Co.*, 282 Pa. 100, 127 Atl. 450, 451, the Supreme Court of Pennsylvania said:

" . . . . an accord and satisfaction cannot arise by reason of the payment of less than is due, unless it clearly appears not only that this was the intention of the payor, but also that the payee expressly agreed to it, or was bound to know of the intention at the time of acceptance; in effect, that 'his taking of the check would be tortious except on the assumption of a taking in full satisfaction'; 3 Williston on Contracts, 3181. It cannot be too strongly stated that with us an accord and satisfaction can never be implied from language of doubtful meaning; indeed, the words themselves deny this possibility. Hence, when a substantial doubt arises, there can be no such implication, the usual rule applies, and the payment will be treated as on account only."

In *Work v. Associated Almond Growers, etc.*, 102 Cal. App. 232, 282 Pac. 965, 966, the District Court of Appeal of California quotes with approval the following from 1 California Jurisprudence, page 134, section 10:

"It is an essential element in an accord and satisfaction by tender of a check that the tender is subject to the condition that the acceptance of the check is satisfaction in full. This condition is not shown by the mere fact that the debtor accompanies the check with an account showing a balance equal to the amount of the check, and it is disproved where the giving and acceptance of the check is followed by such conduct of both parties as clearly shows that they did not consider the check a final settlement of the debt."

The defense of accord and satisfaction is, in effect, a substitution of a new contract for a previous contract or tort;

and the rule is, that the burden of proof is on the one who relies on the new contract in settlement of the old obligation or controversy.

In the very recent case of *Vilter Mfg. Co. v. Rolaff*, 110 Fed. (2d) 491, 498, 500, the Circuit Court of Appeals for the Eighth Circuit, after considering this question at some length, said:

"A deliberate refusal to pay one's debts cannot create a dispute as a basis for an 'accord and satisfaction.' . . . . *It is recognized that, where circumstances permit of reasonable inferences that there was or was not an accomplished accord, the question is one for the jury. However, the burden to establish an accord and satisfaction rested upon the defendant."* (Italics supplied.)

■ The record before us, read in the light of the authorities, impels us to the conclusion that, as a matter of law, it cannot be held that an accord and satisfaction was established by exhibit 4 and the other evidence adduced; it rather presented a question of fact for the jury. What we have said with reference to the legal inferences to be drawn from the exhibits, rejected exhibits and oral testimony adduced, is not to be taken or considered as an expression of any opinion as to the weight to be given the evidence. For the errors we have pointed out, a new trial must be had, wherein the exhibits 1, 2, and 3, should be admitted and the respondent will be put to her defense.

Judgment reversed and a new trial is ordered. Costs awarded to appellant.

Givens, Morgan and Holden, JJ., concur.

Budge, J., concurs in conclusion.