241 P.2d 351

**OSSMEN et ux. v. COMMERCIAL CREDIT CORP.**

No. 7785.

Supreme Court of Idaho.

Feb. 28, 1952.

Gee & Hargraves, Pocatello, for appellant.

Black & Black, Pocatello, for respondents.

GIVENS, Chief Justice.

Respondents sued in conversion for damages based on the foreclosure of a chattel mortgage by notice and sale of a Ford automobile and two trucks, alleging as a basis for the action: " * * * that on September 1st and on September 25th, 1950, the dates hereinafter referred to in this Complaint, plaintiffs had fully paid and performed the covenants and agreements contained in said Chattel Mortgage and Note, and were not in default in any particular, and that the said defendant, without any cause, and without any default made in the conditions of said Mortgage, by these Plaintiffs, and contrary to the terms of said Mortgage, caused to be served on September first, 1950, on the Sheriff of Jefferson County, Idaho, an Affidavit and Notice of Sale under the provisions of Chapter 11, Title 45 of the Idaho Code, for the summary foreclosure by notice and sale of said Chattel Mortgage, and that pursuant thereto, the Sheriff of Jefferson County, Idaho, under the specific directions of the defendant, seized that certain 1949 4-Door Sedan referred to above, and sold the same."

And that the Sheriff of Butte County at the foreclosure sale therein, September 25, sold the truck beds on the trucks, "which were not secured by said chattel mortgage," allegedly over respondents' protest, i. e., as to the sale of the truck beds; that the reasonable value of the trucks and car was $7,000 and the beds, $1,000, and a radio on one of the trucks was $95; (the Ford automobile sold for $1,350, the larger truck for $2,000 and the smaller one for $1,000) alleging as special damages $2,600 because of respondents' inability to perform a contract to harvest crops, and connected therewith, damages of $1,000 because the seizure of the trucks prevented the completion of the purchase of a combine; and asked punitive damages of $5,000.

The answer denied all of the material allegations of the complaint and as a further and separate defense alleged: "That on September 9, and September 25, 1950, plaintiffs were in default under the terms and conditions of that certain mortgage, * * *; that the taking and sale of the said Chattels was all done and had in accordance with the terms and provisions of said Chattel Mortgage."

that prior to September 9 and 25 (dates of the sales) appellant had granted respond-

ents extensions of time; that respondents repeatedly promised to retire the indebtedness and correct the defaults, but failed, neglected and refused to do so; and that at all times defendant treated plaintiffs with forbearance, liberality and tolerance; and that respondents' damages, if any, were the result of their own wilful failure, neglect and disregard of their duties and obligations to pay.

The jury rendered a verdict in favor of respondents and against appellant for $4,-360 general and special damages without further specification, and no punitive damages.

The appeal is from the judgment based on the verdict and orders denying a motion for a new trial and judgment notwithstanding the verdict.

■ Though the answer asserted the mortgage was due, this did not shift the burden of proof which remained throughout upon respondents to prove the chattel mortgage was not due in any particular when foreclosure was started, Idaho Placer Min. Co., Ltd., v. Green, 14 Idaho 294 at pages 303–304, 94 P. 161; Woodruff v. Butte & Mkt. L. C. Co., 64 Idaho 735 at page 740, 137 P.2d 325. Appellant denied respondents' allegation that the mortgage was not due and the further allegation in the answer that respondents were in default under the chattel mortgage, did not as to the question of payment, shift the burden, since appellant asked for no affirmative relief except costs. Southeast Sec. Co. v. Christensen, 66 Idaho 233 at page 239, 158 P.2d 315.

The complaint did not challenge the foreclosure proceedings, except as to the sale of the beds on the two trucks as not being included in the chattel mortgage.

The chattel mortgage thus provided: "In case default be made in the payment of said debt or interest after maturity, or of any of the payments above scheduled, or any extensions or renewals or rearrangements thereof, or if any execution, attachment, sequestration or other writ shall be levied on said chattels or on any other property of Mortgagor or if a petition under the Bankruptcy Act or any Amendment thereof shall be filed by or against said Mortgagor, or if said Mortgagor shall make an assignment for the benefit of his creditors, or if said Mortgagor shall fail to keep and perform any of the covenants, stipulations and agreements herein contained on his part to be performed, or if any insurance company should cancel as to Mortgagor any policy against the hazards of fire and theft, or if said Mortgagee shall at any time deem said mortgage, said chattels, said debt or said security unsafe or insecure, or shall choose so to do, then upon the happening of said contingencies or any of them, the whole amount therein secured, on each of said payments above scheduled remaining unpaid, is by said Mortgagor admitted to be due and payable, and said Mortgagee at his option, without notice, is hereby authorized to enter upon the premises of the Mortgagor or other places where said chattels might be, and take possession of and remove said chattels, and all equipment, ac-

cessories, or repairs thereon, which shall be considered a component part thereof and subject to this mortgage, * * *."

Respondents refinanced the uncompleted purchase of the automobile and the two trucks by giving appellant a chattel mortgage, together with a note secured thereby, for $5,437.38 made up of a balance due on the two trucks of $2,800, and $2,250 in liquidation of a disputed claim between respondents and appellant, carrying charges, interest, etc. Installments on the chattel mortgage were due and paid as follows:

| When Due | | | Amount | When Paid | | | Amount |
|----------|---|------|--------|-----------|------|------|--------|
| December | 2, | 1949 | $100 | December | 13, | 1949 | $100 |
| January | 2, | 1950 | 100 | January | 10, | 1950 | 100 |
| February | 2, | " | 100 | March | 13, | " | 100 |
| March | 2, | " . | 100 | March | 23, | " | 100 |
| April | 2, | " | 100 | May | 3, | " | 100 |
| May | 2, | " | 200 | May | 15, | " | 200 |
| June | 2, | " | 200 | July | 5, | " | 200 |
| July | 2, | " | 200 | July | 30, | " | 200 |
| August | 2, | " | 200 | | | | |
| September | 2, | " | 200 | | | | |
| October | 2, | " | 200 | | | | |
| November | 2, | " | 3,737.38 | | | | |

August 2, nine payments had become due totaling $1,300. On September 2, another payment of $200 would have fallen due, making a total amount due September 2, 1950, of $1,500.

From the inception of the giving of the chattel mortgage, payments were not made on time,[1] and as appears from Dfts. Ex. 21, which were the posting media or original entries made by appellant when pay-

I.

"Howe, Idaho
"August 18, 1950
"Commercial Credit Corporation
"428 West Center Street
"Pocatello, Idaho
 "Attention Mr. Bradford, Unit Mgr.
"Gentlemen:
 "We are in receipt of your letters regarding our July and August payments. Needless to say, we regret the delinquency of our July installment.
 "We are beginning our harvest of grain this following week. We will do our utmost to facilitate sale of enough of the grain to bring our account up to date. We should be able to do this by the end of the following week.
 "Once again we wish to express our appreciation for the consideration you have shown us on our account. We feel that it has been due to your knowledge of our sincere desire to clear our account with you, and the understanding you have of the difficulties under which we have worked the past year."
 "Very truly yours,
 "s/ Lee Ossmen
 Lee Ossmen"
"LO/h

ments were made and with the exception of three other amounts hereinafter discussed, are the only slips indicating payments on respondents' account.

 Prior to March 12, 1950, there were conversations, direct and over the telephone, and correspondence between respondents and appellant's manager with reference to respondents' delinquencies and a request for payment, culminating in respondents sending appellant a check for $475 and this letter from respondent to appellant as to the disposition thereof:

"Howe, Idaho
"March 18, 1950
"Commercial Credit Corporation
"410 West Lewis Street
"Pocatello, Idaho
"Gentlemen:

"This is to authorize you to apply $100.00 of the $475.00 check you are holding on the February contract payment, with the balance of $375.00 to be applied to the last payment of $3,737.38, decreasing this payment accordingly. This in no way changes or modifies Chattel Mortgage, dated October 24th, 1949, executed by myself and Commercial Credit Corporation, other than in the manner mentioned above."

"Yours very truly,
"Dfts. Ex. 9. "s/ Lee Ossmen
 Lee Ossmen"

One Hundred Dollars of this $475 was applied by appellant on the current installment, evidently in March, and the balance of $375 to the last payment of $3,737.38, re-

ducing the same to $3,362.38, as appears from Dfts. Ex. 18. A page from respondent's ledger, Plfs. Ex. D–1, purports to show the application of $475 on the current installments, under date of February 16, 1950. Such entry by respondent in his ledger, uncommunicated to appellant, does not controvert the binding effect of the letter of March 18, undenied by respondent. Murphy v. Mut. Life Ins. Co., 62 Idaho 362 at page 376(5), 112 P.2d 993; Malcolm v. Hanmer, 64 Idaho 66, 127 P.2d 331; Shapira v. Budish, 275 Mass. 120, 175 N.E. 159 at page 161(4); Southern Coal Co. v. Rice, 122 S.C. 484, 115 S.E. 815, at page 818, last half of (8, 9); Howell v. Ott, 182 Miss. 252, 180 So. 52, 181 So. 740.

Respondent himself admitted he made the payment and while he testified he did not remember writing Dfts. Ex. 9, the signature at the bottom appeared to be his.

"Q. Do you recall having told Mr. Jensen it it was agreeable to apply $375.00 on the payment which was due,—the big payment due November 2nd?"

* * * * * *

"A. Yes; I told him he could apply,— I asked him to apply the one hundred dollars on the February account. Is there more to that question?"

* * * * * *

"A. Well, I know he had asked me about that, but I am not sure whether I answered him that it was all right to pay it there or not.

"Q. Do you recall having written a letter to Mr. Jensen on the 12th of March, 1950,

with reference to your telephone conversation, and the payment? A. Well, I may have done."

\* \* \* . \* \* \*

Q. Will you state, generally, Mr. Ossmen, what defendant's exhibit No. 7 purports to be? A. Well, apparently it is a letter to Commercial Credit Corporation, Pocatello, Idaho, attention Mr. Johnson.

"Q. Whose signature appears at the bottom of the letter, Mr. Ossmen? A. That is my signature."

Appellant's manager testified that Dfts. Ex. 9 was received in response to a letter from him to respondent to the effect a previous letter directing the way in which the $475 was to be credited, Dfts. Ex. 7,[2] was incorrect and that respondent's signature was on both letters. This was not denied. Respondents' objection that the letter, Dfts. Ex. 9, varied the terms of the chattel mortgage is not well taken, because the parties could agree as to how any particular amount was to be applied—the chattel mortgage only called for certain payments at certain times. Thus, respondent's testimony did not explain away or nullify the force and effect of Ex. 9 as indicating how the $475 was

to be credited; consequently, September 1, 1950, only $1,100 had been paid on the current installments due on the chattel mortgage and at that time there was due, by the schedule of installments, $1,300.

Respondents further contend they are entitled to two credits which should have been considered as payments on the chattel mortgage; one for $725 or $730, evidently in connection with the sale of a taxicab or taxicab business by respondent, and a reserve credit of $253.31 to cover repossessions when he was a Ford dealer in Malad—respondent contending they are shown by Plfs. Ex B dated May 1, 1947, and Ex. J–1. Respondent testified the entry in Plfs. Ex. J–1;

"74468 (1941 Ply. 4-door Sdn.) (cab) $725.00" was made in 1947. Respondent also testified he said to appellant's manager at a conversation of August 26, 1950: "A. \* \* \* 'As far as my records show, and as far as I can remember, I have never been paid for that contract, and I believe that you still owe me that seven hundred dollars. Why wouldn't it be fair to apply that at this time,' and he looked through the records, but he wasn't able to find anything except

2.

"Howe, Idaho
March 12, 1950
"Commercial Credit Corporation
"Pocatello, Idaho
"Attention Mr. Johnson
"Gentlemen:
"This is to authorize you to apply $100.00 of the $475.00 check you are holding on the February contract payment. The balance of $375.00 is to be

applied directly to the contract, decreasing the total balance owing you on our contract.
"Our March payment will be in your office on the 20th. Moving expenses have made it necessary to delay the payment until that date.
"Very truly yours,
"s/ Lee Ossmen
Lee Ossmen"
"Dfts. Ex. 7.

where the Shafer and Gordon account had been paid off, but it didn't show where I had been paid the seven hundred dollars, and he said, 'Well, the latter part of Mr. Gray's term in office he left the books so muddled up that we aren't able to determine at this time whether it has been paid or not. We think that it has been paid, but we are not sure,' and he said, 'We will have to look further,' * * *."

Thus, it is clear these two amounts, $725 and $253.31, had accrued in 1947 and not later.

It would unduly lengthen the opinion to recite all of the evidence with regard to the $253.31 and the $725 (Dfts. Ex. 23 [3]) which is haphazardly scattered throughout the record and often more confusing than enlightening, respondent's concluding statement as to the $725 being:

"Q. Mr. Ossmen, after having seen Defendant's Exhibit No. 23 (check) for identification, do you still say that you did not receive the proceeds of the Shafer-Gordon account? A. I am still not certain, sir."

Myers, a witness for appellant, testified the check referred to above was payment of the account.

Conceding respondent asked and urged that appellant should credit him with these amounts, he nowhere testified there was any agreement or understanding they would be so credited or that they were so credited. Conceding, also, that appellant owed these two amounts to respondents, which appellant denies and respondent himself casts doubt upon:

"Q. Are you now prepared to claim to the Court and jury that you have never

---

3.

| | "Pocatello Idaho | January 2, 1947 | Voucher Check |
| --- | --- | --- | --- |
| | City | Date | No. 930 |
| | | | Bank No. —— |

Commercial Credit Corporation

| Idaho Bank & Trust Company 92–284 Pocatello, Idaho | Void If not presented within sixty (60) days from date issued. |
| --- | --- |

Pay * * * Seven Hundred Thirty and No/100 * * Dollars $730.00

To the Order of Lee Ossmen Motor Company

Malad City, Idaho

Commercial Credit Corporation

s/ K. H. Myers
Authorized Signature
s/ M. B. Dolman
Authorized Signature"

been paid your $725.00? A. There is still a doubt in my mind whether I have been or not.

"Q. In view of that doubt, do you feel that Commercial Credit owes it to you to pay that, and should have applied it on your chattel mortgage? A. I only feel that it is just and right that before Commercial Credit should foreclose on me they should do me the justice to look into it.

"Q. Did not Commercial Credit do you justice to look into it on the very occasion on which you asked for it? A. Yes; but they didn't get the information that I was after."

The burden of proof was on respondents to prove these amounts were payments. Before they could be considered and credited as payments on the chattel mortgage, they would have had to be so acknowledged or a specific or implied agreement made between the parties to give them such effect. Stanfield v. Kennedy, 43 Ga.App. 738, 159 S.E. 880; Marr v. Heggie, 317 Mass. 286, 58 N.E.2d 1.

If appellant had monies in its possession belonging to respondents, it is doubtful if it had authority, absent acquiescence by respondents, to offset the same before foreclosure. Moore v. Gould, 151 Cal. 723, 91 P. 616; Zion's Savings Bank & Trust Co. v. Rouse, 86 Utah 574, 47 P.2d 617. In any event, such offset was not made and respondent did not testify any agreement between the parties was made so to do, hence, these two amounts of $253.31 and $730 or $725, if due respondents from appellant, could not on September 1, 1950, be considered as payments on the chattel mortgage. Parker v. Carter, 91 Ark. 162, 120 S.W. 836, at page 839, 134 Am.St.Rep. 60; Sanders v. McClintock, 175 Ark. 633, 300 S.W. 408 at page 411; see 57 C.J. No. 396, p. 415.

■ The above analysis of the evidence with regard to the force and effect to be given the payment of $475, and the claimed credits of $253.31 and $725 or $730, did not justify or authorize the giving of Instruction No. 9, where, in part, the Court told the jury that: " * * *, then such payments must be treated as cumulative against the installments currently due on the chattel mortgage, and due at the time of the foreclosure."

This did not take into account that by the letter with regard to the $475 payment, a definite agreement had been made relative thereto, deferring the crediting of part thereof.

■ Since respondents' complaint did not challenge the foreclosure proceedings, appellant's objections to the evidence bearing upon the method, manner, regularity and irregularity of the foreclosure proceedings should have been sustained and the admission of such evidence was prejudicially erroneous for several reasons: it was not justified by the pleading of respondents; Chicago, R. I. & P. Ry. Co. v. Mailes, 52 Okl. 278, 152 P. 1131; Atchison, T. & S. F. Ry. Co. v. Lynn & Hud-

son, 54 Okl. 701, 154 P. 657; Comanche Mercantile Co. v. Wheeler & Motter M. Co. 55 Okl. 328, 155 P. 583; Pierce v. Barks, 60 Okl. 97, 159 P. 323; Reid v. Runyan, 100 Okl. 134, 226 P. 873; Erisman v. Thompson, 140 Tex. 361, 167 S.W.2d 731; appellant's further answer did not allege the proceedings, as such, were regular—merely that the chattel mortgage was foreclosed in accordance with the provisions thereof. The error was emphasized and the jury further confused by the giving of Instructions 6, 11, 12, 13, 14, and 15; Chicago, R. I. & P. Ry. Co. v. Spears, 31 Okl. 469, 122 P. 228 at page 230; Chambers v. Van Wagner, 32 Okl. 774, 123 P. 1117 at page 1118; Warden v. Kerns, 108 Okl. 115, 233 P. 1048, which purported to tell the jury how they should consider and pass upon the regularity of the foreclosure proceedings and which were totally inconsistent with Instruction No. 27, which was: "* * * that the issue framed by the pleadings in this case is only whether there was or was not a conversion by Commercial Credit Company of personal property. The validity or invalidity of the sheriff's sale held in connection with the foreclosure is not an issue in this case and you are not required to make a finding with respect to such sale."

Instruction No. 27 was correct, but the other Instructions on this feature, all assigned as error by appellant, were incorrect.

■ Instructions which are contradictory, if material, constitute error. Shallis v. Fiorito, 41 Idaho 653 at page 660, 240 P. 932; Detroit Fire, etc., Ins. Co. v. Sargent, 42 Idaho 369 at page 374, 246 P. 311.

The Instruction at folio 1560 (misnumbered), No. 32, was as follows: "In this case, ladies and gentlemen of the jury, if you should find that the plaintiffs are entitled to recover from the defendant, you are instructed that the proceeds of the sheriff's sale in question of the three motor vehicles would be applied to the extinguishment of the debt of the plaintiffs to the defendant, and the plaintiffs would be entitled to recover any balance remaining over."

■ This Instruction, if not contradictory, at least rendered uncertain and confusing Instruction No. 28 and was prejudicially erroneous. Advance-Rumely T. Co. v. Brady, 47 Idaho 726, 278 P. 224; West v. Prater, 57 Idaho 583 at page 598, 67 P.2d 273. A positive instruction as to the deduction should have been given and Intruction No. 28 should have been as follows: "You are instructed that in the event you return a verdict in favor of plaintiffs, you must deduct from any damages awarded, the total amount of the chattel mortgage unpaid."

The acceleration clause in the mortgage authorized the mortgagee, if any installment was past due, to treat the mortgage as past due in the full amount and foreclose accordingly. Instruction No. 6, quoting Section 6–103 I.C., assigned as error by appellant, was, therefore, not applicable

because the option in said Section is given the mortgagee—not the mortgagor. It is doubtful if this Section is applicable to the foreclosure of a chattel mortgage by notice and sale, Brockman v. Caviness, 61 Idaho 254, 100 P.2d 946, though apparently California has somewhat held to the contrary, Podrat v. Oberndorff, 207 Cal. 457, 278 P. 1035, 63 A.L.R. 1308, but if applicable, California has held it does not require partial foreclosure, Maddox v. Wyman, 92 Cal. 674, 28 P. 838 at page 839; Mercantile Trust Co. v. San Joaquin Agricultural Corp., 89 Cal.App. 558, 265 P. 583 at page 594. The Section of the statute does not purport to give the sheriff authority to direct or conduct a partial sale, but only a court. It was, therefore, prejudicially erroneous, because this Instruction could not have helped but confuse the jury.

The allegations in the answer with regard to the extensions of time and reasonable compliance being sufficient, are so indefinite, vague and uncertain that it is difficult, if not impossible, to consider what issue was thereby framed; therefore, while appellant assigns as error the second paragraph of Instruction No. 2,[4] it would seem the learned trial court was attempting to state to the jury the law applicable to appellant's further and separate defense.

It will be noted the court did not say "affirmative defense," but "separate defense."

In view of the fogginess of appellant's pleading, we cannot say the trial court erred in giving Instruction No. 2 and the last paragraph of No. 32 (confused numbering of folio) the latter being favorable to appellant, and which were about as responsive to this pleading as it would seem possible to draft.

Respondents urge, probably to counteract the above portion of appellant's answer: "That between September 1, 1950 and September 25, 1950, negotiations were going on at all times looking toward an adjustment, refinancing, or reinstatement of the loan, and the sale on September 25th was therefore entirely unreasonable."

It is likewise difficult to translate this contention into a definitive legal proposition, but endeavoring to encompass within it any possible, justifiable, points of law, if it means there was some kind of modification of the requirements of the chattel mortgage or a new agreement, it suffices to admonish that as to such contentions by the respective parties, the burden is on the party asserting such claimed new adjustment to prove it. Clay v. Rossi, 62 Idaho 140 at page 149 et seq., 108 P.2d 506; Stone v. Webster, 65 Idaho 392, 144 P.2d 466; Exchange Lumber & Mfg. Co. v.

4. " * * * * * *
"And, likewise, before the separate defense of the defendant would be available to it as such defense, it is incumbent upon the defendant to prove by a preponderance of the evidence each and every material allegation of such separate defense."

Thomas, 71 Idaho 391 at page 396, 233 P.2d 406.

There is no evidence nor are there any reasonable inferences or even implications from the evidence indicating the appellant induced respondents to omit paying any installment or payment on the chattel mortgage; consequently, Instruction No. 4 was erroneous.

■ Appellant assigns as error the admission of respondent's testimony with regard to what respondents would have done if the foreclosure had not proceeded, with reference to the hauling of the crops and the purchase of a combine. Instructions 23 and 24 as to when profits may be recovered as damages were not incorrect as far as they went and are not excepted to by appellant. No additional instructions were requested by appellant; no authorities are cited by it supporting such assignment; therefore, we are not constrained to hold this evidence inadmissible.

■ The factual issues of whether respondents were in default; what, if any, extensions of time were granted; whether any lawful, sufficient tender was made on September first; whether it was timely or too late; whether the mortgage was not due on that date; the consequent questions of the amount of damage, if any, respondents suffered if the mortgage were foreclosed prematurely and appellant, therefore, guilty of conversion, were issues to be solved by the jury. Since the cause is remanded for a new trial, we will not fur-

ther discuss the evidence, except to note it is confusingly disconnected and voluminous.

The judgment is reversed and the cause remanded with instructions to grant a new trial in accordance with this opinion. Costs awarded to appellant.

PORTER, TAYLOR, THOMAS and KEETON, JJ., concur.