652 P.2d 661

**W. F. CONSTRUCTION COMPANY,
INC., Plaintiff-Respondent,**

v.

**Charlotte KALIK, Defendant-Appellant.**

No. 13720.

Court of Appeals of Idaho.

Oct. 12, 1982.

Lawrence J. Young, Ketchum, for defendant-appellant.

Mark William Russell of Kneeland, Laggis, Korb, Collier & Benjamin, Ketchum, for plaintiff-respondent.

SWANSTROM, Judge.

W. F. Construction Company, Inc. brought suit to foreclose a contractor's lien against real property owned by Charlotte Kalik in Sun Valley, Idaho. The district court found that the owner was indebted to the contractor for the amount claimed in the lien, minus a small offset. The owner appeals from the judgment allowing foreclosure of the lien and granting the contractor its attorney fees. We affirm.

In September of 1977, the parties entered into an oral agreement for the construction of a house by the contractor on the owner's property. The contractor prepared and delivered to the owner a standard contract form recommended by the American Institute of Architects (AIA) which contained terms relating to the total cost of the project and the contractor's fee. Neither party signed the AIA contract, but the court admitted it into evidence to outline the contents of the parties' oral agreement. The AIA form contract stated that the owner was to reimburse the contractor for the cost of the work, plus a contractor's fee of 10% of the "direct" and "indirect" costs of the work. The "direct" costs were the actual costs of material and labor expended by the contractor to build the house. The "indirect" costs were a portion of the contractor's general overhead allocated to the job, and they were set at 5% of the direct costs. Thus, under the AIA form contract, the contractor was to be paid a total fee of approximately 15% of the direct construction costs. The trial court found that this "15%" fee term was part of the parties'

initial oral agreement. The form contract also provided that the maximum cost to the owner, including the contractor's fee, would not exceed $106,000, subject to increase or decrease if changes were made in the plans.

The contractor began work on the house in September, 1977. By June of 1978 the house was ready for occupancy and the owner's architect issued a certificate of substantial completion. The owner moved in and the contractor presented its bill. It showed the direct costs alone amounted to $117,368, not including the "15%" contractor's fee. The owner balked at paying the balance due, claiming that the house cost more than agreed, and that the workmanship was defective.

The owner, her architect, and the contractor negotiated and reached a compromise. In return for payment of the fee and outstanding costs, the contractor agreed to complete a "punch list" of items that the owner and the architect wanted done, and to reduce its fee to 10% of direct costs. The contractor undertook to perform the punch list, but the owner was not satisfied and withheld payment. Another compromise was reached, the contractor agreeing this time to reduce its fee to a flat $10,000 and to complete a second punch list. The contractor worked on those items. By December of 1978, the owner had paid the remainder of all outstanding costs, but still did not pay the $10,000 contractor's fee. At this point negotiations ceased and the contractor filed its lien against the property, claiming $18,692 due. This amount was based on the original "15%" fee agreement.

At trial, the owner did not dispute the claim of the contractor that the parties originally had an oral agreement providing for a "15%" contractor's fee. The owner did not testify and did not dispute the reasonableness of the charges made by the contractor. The contractor's witnesses testified to several changes and additions to the original plans that the owner and her architect requested after the start of construction. The evidence also showed that specific accounting was made to the owner for the cost of all labor and materials that went into the work. The owner, however, presented three defenses. The first was

that the contractor's claim of lien had been filed too late to comply with I.C. § 45–507. The second defense was that the contractor was bound by the compromise agreement which provided only for a flat $10,000 fee. The owner argued that when the contractor submitted an itemized statement of costs plus the $10,000 fee, there was an "account stated" which she accepted, foreclosing any later claim based on the original agreement. She finally urged that, even if the lien had been filed in time, it was invalid because the amount claimed was excessive. At trial the owner also sought to show she was entitled to substantial offsets against the contractor's fee because of unsatisfactory work by the contractor.

The trial judge found the numerous changes requested by the owner and the architect accounted for the cost overrun on the project. He found that the contractor had fully, or substantially, completed the work, including the items on the two punch lists. The judge found the parties originally had agreed to the "15%" fee arrangement. He awarded judgment to the contractor for the amount of the claimed lien, $18,692, less an offset of $600 allowed as the cost for sandblasting and refinishing a concrete wall. The court also awarded the contractor $4,023.74 as costs of suit, including attorney fees, under I.C. § 45–513.

■ Now, on appeal, the owner contends that the parties never had a "15%" fee agreement. She asserts that no agreement was reached concerning the fee until the contractor offered to take $10,000 as its fee, and she accepted the offer. This contention was not raised and considered below, and will not be considered for the first time on appeal. *See, e.g., State ex rel. Evans v. Click,* 102 Idaho 443, 631 P.2d 614 (1981).

We turn now to the negotiations which followed the original agreement. Notwithstanding her contention on appeal that the $10,000 agreement represented an "account stated," the owner alleged in her counterclaim that the "parties entered into an [sic] Conciliation and Satisfaction Agreement" which she also referred to as "the revised Agreement of November 28 and 30, 1978." The trial court determined that the parties,

in trying to resolve the dispute in the summer of 1978, attempted to achieve an "accord and satisfaction."

■ We concur with the trial court's characterization of the negotiations. In *Fairchild v. Mathews,* 91 Idaho 1, 4, 415 P.2d 43, 46 (1966), the Idaho Supreme Court defined accord and satisfaction:

> Accord and satisfaction is a method of discharging a contract or cause of action, [w]hereby the parties agree to give and accept something in settlement of the claim or demand of the one against the other, and perform such agreement, the "accord" being the agreement and the "satisfaction" its execution or performance.

*See also Nordling v. Whelchel Mines Co.,* 90 Idaho 213, 409 P.2d 398 (1965).

In this case, the owner's agreement to accept completion of the items on the second punch list, and the contractor's agreement to do that work for immediate payment of the $10,000 constituted the "accord." The completion of those items and the payment of the $10,000 would have supplied the "satisfaction." There was substantial and competent, though disputed, evidence at trial showing the contractor did satisfactorily complete the punch list and that payment of the $10,000 was wrongfully withheld. These findings will not be disturbed on appeal. *Cougar Bay Co., Inc. v. Bristol,* 100 Idaho 380, 597 P.2d 1070 (1979).

The district judge concluded that when the owner failed to perform her part, in satisfaction of the accord, the contractor was entitled to elect to proceed on the compromise agreement or upon the original contract providing for the "15%" contractor's fee. We believe his ruling was correct.

"The general rule is that the underlying duty or debt is not discharged until there is satisfaction on the accord. That is, the accord is executory." *Caldwell v. Armstrong,* 642 P.2d 47, 49 (Colo.App.1982). *See also Owens v. Hunter,* 368 P.2d 753 (Ariz.1962); *Hinkle v. Basic Chemical Corp.,* 163 Colo. 408, 431 P.2d 14 (1967); *Goggins v. Bookout,* 141 Mont. 449, 378 P.2d 212 (1963); *Chopping v. First National Bank of Lander,* 419 P.2d 710, (Wyo.1966) cert. de-

nied 387 U.S. 935, 87 S.Ct. 2062, 18 L.Ed.2d 998; Restatement (Second) of Contracts, § 281 (1979).

Next we turn to the owner's argument that the lien was invalid because it was for an excessive amount and because it was tied to a non-existent 15% fee agreement. This is merely an extension of the previous arguments. We must decide against the owner on these points for the obvious reason that we have held the contractor was entitled to base his lien upon the original fee agreement when—through no fault of the contractor—the owner failed to perform the "satisfaction."

█ The owner also contends the trial court erred in awarding costs and attorney fees to the contractor under I.C. § 45–513. This contention is based on the assumption the contractor's lien was in an excessive amount and was invalid. We have upheld the claim of lien. Therefore, the award of costs and fees incurred in the trial court by the contractor was proper. *Hafer v. Horn,* 95 Idaho 621, 624, 515 P.2d 1013, 1016 (1973); *J.E.T. Development v. Dorsey Const. Co., Inc.,* 102 Idaho 863, 642 P.2d 954 (Ct.App.1982).

█ The owner has also brought to our attention that the district court made a clerical error in stating the amount of the judgment as $22,715.80. From the record it appears that the $600 offset which the court allowed the owner was either not deducted or that a typographical error was made in preparing the judgment. The total amount of the judgment should be reduced by $600, to $22,115.80. We note, however, that it was not necessary for the owner to present this issue on appeal. The error could have been corrected pursuant to I.R. C.P. 60(a) by making a motion to the district court. Appeal is not the proper procedural remedy to correct such errors. Nevertheless, we direct the district court to modify the judgment.

█ Finally, we address the contractor's claim that it is entitled to additional attorney fees on appeal. Idaho Code § 45–513, discussed above, has been interpreted by the Idaho Supreme Court to provide no basis for a successful lien claimant to re-

ceive attorney fees on *appeal. Hendrix v. Gold Ridge Mines,* 56 Idaho 326, 54 P.2d 254 (1936). The ruling was explained in *Weber v. Eastern Idaho Packing Corp.,* 94 Idaho 694, 698–99, 496 P.2d 693, 697–98 (1972). The Supreme Court has continued to follow this precedent. *See Haile v. Davis,* 99 Idaho 853, 590 P.2d 580 (1979). However, these decisions do not insulate lien foreclosure cases from discretionary awards of attorney fees on appeal under I.C. § 12–121. *Acoustic Specialties, Inc. v. Wright,* 103 Idaho 595, 651 P.2d 529 (1982). Such an award is appropriate when we are left with the abiding belief that an appeal has been brought or defended frivolously, unreasonably or without foundation. *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 591 P.2d 1078 (1979); *Barlow's Inc. v. Bannock Cleaning Corporation,* 103 Idaho 310, 647 P.2d 766 (Ct.App.1982).

█ The only issues properly raised in this appeal were that the trial court erred in certain findings of fact concerning the contractor's "15%" fee arrangement, and in upholding the contractor's lien based on that fee arrangement. Yet, in the trial court, the owner did not dispute the contractor's evidence showing the parties did have such an agreement. Even had the evidence been conflicting at trial, this appeal would have done no more than "invite the appellate court to second-guess the trial court" on such evidence. *T-Craft Aero Club, Inc. v. Blough,* 102 Idaho 833, 837, 642 P.2d 70, 74 (Ct.App.1982).

In our view this appeal has presented no genuine issue of law. We conclude the appeal was brought without foundation. We believe it is appropriate to award attorney fees on appeal to the contractor, the prevailing party under I.C. § 12–121.

Judgment affirmed as modified. Costs and attorney fees to respondent.

·WALTERS, C.J., and BURNETT, J., concur.