915 P.2d 733

**Joan F. HOLLEY, Plaintiff–Respondent,**

v.

**John Eugene HOLLEY, Defendant–Appellant.**

**Roz HOLLEY, Third–Party Claimant–Appellant,**

v.

**Joan F. HOLLEY, Third–Party Defendant–Respondent.**

No. 21813.

Court of Appeals of Idaho.

Feb. 6, 1996.

Petition for Review Denied May 16, 1996.

Dennis S. Voorhees, Twin Falls, argued for appellants.

Hepworth, Lezamiz & Hohnhorst, Twin Falls, for respondent. Eileen A. McDevitt argued.

WALTERS, Chief Judge.

John and Roz Holley appeal from a district court's appellate decision which affirmed a magistrate's order disallowing certain arrearages in alimony owed by John to his former wife, Joan Holley, but also holding that Joan was entitled to collect alimony accruing after September, 1993. For the reasons stated herein, we reverse the magistrate's order insofar as it requires John Holley to pay alimony from and after October, 1993, and we remand the case for entry of a satisfaction of judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1981, Joan and John Holley were divorced and John agreed to pay alimony at $1,000 per month, subject to future cost-of-living adjustments. Thereafter, John suffered financial reversals and went through bankruptcy. In November 1988, Joan and John entered into an agreement for a scheduled payout of $10,000, with an interest rate of fifteen percent per annum, as a final discharge of the alimony obligation. The agreement provided that in the event John did not pay the full amount by June 27, 1993, the alimony provisions of the Decree of Divorce and Property Settlement Agreement would be controlling.

From 1988 through mid–1993, John made monthly installment payments pursuant to the 1988 agreement, but did not comply with the agreement's requirement that he complete payments by June 27, 1993. According to John's undisputed affidavit, he telephoned Joan on September 13, 1993, inquiring as to the amount due to fulfill the November 1988 agreement. His affidavit states that he had misplaced his copy of the agreement and believed the payment deadline was in October, 1993. During their telephone conversation, Joan informed him that she would send a ledger of accruals and credits on the 1988

obligation. According to Joan's undisputed affidavit, she further informed John that "the balance on the ledger was only correct if he had paid by the deadline."

Both affidavits state that Joan sent John the ledger, and that on September 25, 1993, John called Joan to question her about "late charges" appearing on the ledger. The dispute centered on the date which would allow Joan to assess a late charge. John believed a payment should not be subject to late charges if the payment was sent by the fifth of the month, but Joan assessed the late charge on any payment she had not received by the fifth of the month. John's affidavit states that he ultimately agreed to pay $731.84, the amount appearing on the ledger as the unpaid balance. According to Joan's affidavit, during this second telephone call, she told John that "the amount shown was only correct if payment was made by the deadline." Joan's affidavit further states that "[a]t no time did [she] ever tell him that [she] would not pursue legal remedies if he paid [her] the amount shown on the ledger." At the end of September, John sent Joan a check for $750, marked "Paid in Full plus int. & late ch." After obliterating the "paid-in-full" notations, Joan negotiated the check.[1]

According to Joan's affidavit, she contacted John in mid-November, requesting that he help her pay medical expenses she had incurred. When John refused, Joan informed him "that he had not complied with the deadline for payment" under the 1988 agreement and that she "never agreed to accept his September payment as payment in full."

Joan then sought a writ of execution in the amount of $336,468.76 against John for outstanding alimony and interest thereon. John and his current wife, Roz Holley, filed an objection to the writ, asserting satisfaction of the claim and an exemption from execution against Roz's interest in community property.

Following a hearing, the magistrate concluded that when John did not make the full payment of $10,000 by June 27, 1993, as

---

1. Although the magistrate did not make findings concerning the date the check was cashed, a copy of the check submitted with the Appellant's

Brief reflects that Joan cashed the check on November 12, 1993.

required by the 1988 agreement, the "accord failed and the obligations of the parties reverted back to the decree of divorce as amended." The magistrate further concluded that, pursuant to I.C. § 28–3–310, a new accord and satisfaction occurred when the parties had discussions regarding the final pay-off amount in September 1993 and Joan negotiated John's "paid-in-full" check. The magistrate found that negotiation of the check constituted satisfaction of alimony up to and including September 1993, but was not satisfaction of alimony which accrued after September 1993. The magistrate concluded that John was obligated to pay alimony accruing after September 1993 in the amounts provided for by the divorce decree. The magistrate further denied the claim for exemption, holding that community property is subject to execution for a spouse's separate debts, including alimony. The district court affirmed the magistrate's rulings.

John and Roz Holley appeal, arguing that Joan's negotiation of John's "paid-in-full" check effected satisfaction of the 1988 accord and discharged the underlying obligation. They further argue that Roz Holley's interest in their community property was unavailable for satisfaction of John's alimony obligations.

## ANALYSIS

■ We review the magistrate's decision independently from, but with due regard for, the district court's appellate decision because the issues before us are the same as those considered by the district court. *Hilt v. Draper*, 122 Idaho 612, 616, 836 P.2d 558, 562 (Ct.App.1992). This Court will defer to factual findings made by the trial court if they are not clearly erroneous. I.R.C.P. 52(a); *Bumgarner v. Bumgarner*, 124 Idaho 629, 637, 862 P.2d 321, 329 (Ct.App.1993). We do not weigh the evidence, nor do we substitute our view of the facts for that of the trial judge. *Id.* We merely determine whether the findings are supported by substantial, even if conflicting, evidence in the record. *Id.* However, we will exercise free review over the lower court's conclusions of law to determine whether the court correctly stated the applicable law, and whether the

legal conclusions are sustained by the facts found. *Id.*

■ John argues that the magistrate erred in concluding that Joan's negotiation of the "paid-in-full" check did not satisfy alimony obligations accruing after September 1993. He contends that Joan's negotiation of the check effected satisfaction of the 1988 accord and discharged the underlying obligation. Therefore, he asserts, he does not owe any amount to Joan.

■ "Accord and satisfaction is a method of discharging a contract or cause of action, [w]hereby the parties agree to give and accept something in settlement of the claim or demand of the one against the other, and perform such agreement, the 'accord' being the agreement and the 'satisfaction' its execution or performance." *Fairchild v. Mathews*, 91 Idaho 1, 4, 415 P.2d 43, 46 (1966). "The general rule is that the underlying duty or debt is not discharged until there is satisfaction on the accord. That is, the accord is executory." *W.F. Const. Co., Inc. v. Kalik*, 103 Idaho 713, 715, 652 P.2d 661, 663 (Ct.App.1982). "Under an executory accord, the original duty is suspended until satisfaction or breach of the accord. If the accord is breached, the injured party may sue either upon the original obligation or upon the compromise agreement." *World Wide Lease, Inc. v. Woodworth*, 111 Idaho 880, 885, 728 P.2d 769, 774 (Ct.App.1986). Accord and satisfaction is an affirmative defense, and the burden of proving the elements of an accord and satisfaction is upon the party relying thereon. *Clay v. Rossi*, 62 Idaho 140, 108 P.2d 506 (1940).

Under Idaho law, accord and satisfaction may be effected by use of a written instrument. Idaho Code § 28–3–310 provides in pertinent part:

**Accord and satisfaction by use of instrument.**—(1) If a person against whom a claim is asserted proves that (i) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (ii) the amount of the claim was unliquidated or subject to a bona fide dispute, and (iii) the claimant obtained pay-

ment of the instrument, the following subsections apply.

(2) ... [T]he claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.

This statute, adopted in 1993, altered the law as it previously had existed in Idaho. Prior case law took the approach that the intentions of the debtor and creditor were crucial in determining whether an accord and satisfaction has occurred when the debtor gives a check marked "payment in full" to his creditor for less than the amount claimed by the creditor. *See, e.g., Perkins v. Highland Enterprises, Inc.,* 120 Idaho 511, 817 P.2d 177 (1991). However, the purpose of the new statute was to codify certain common law rules not previously followed in Idaho. Comment 2 to I.C. § 28–3–310 explains the effect of the statute using the scenario of a buyer as a debtor and the seller as a creditor concerning a dispute over the bill for a purchase of goods or services. The comment states:

> [T]he buyer can propose a settlement of the disputed bill by a clear notation on the check indicating that the check is tendered as full satisfaction of the bill. Under the common law rule the seller, by obtaining payment of the check accepts the offer of compromise by the buyer. The result is the same if the seller adds a notation to the check indicating that the check is accepted under protest or in only partial satisfaction of the claim. Under the common law rule the seller can refuse the check or can accept it subject to the condition stated by the buyer, but the seller can't accept the check and refuse to be bound by the condition.

One court has noted that sound public policy dictates the result that binds the creditor as a matter of law where the creditor accepts a payment tendered only on the express condition that its receipt is to be considered a full or complete satisfaction of the amount originally in dispute. In *Burke Co. v. Hilton Development Co.,* 802 F.Supp. 434 (N.D.Fla.1992), the court said:

> The Court is of the opinion that sound public policy also dictates this result. As a matter of independent judicial philosophy, I cannot overlook the injustice which would result from permitting a party to accept another's check on the express condition that it discharge a prior debt, and then later turn around and sue the first party for the remainder due under the original debt. As noted by the court in [*Eder v. Yvette B. Gervey Interiors, Inc.,* 407 So.2d 312, 314 (Fla.1981)] such view runs afoul of both logic and sound public policy, as it calls for the elimination of a convenient and valuable tool for resolving disputes informally, without litigation.
>
> · · · · ·
>
> When a creditor negotiates the tendered check with knowledge of the debtor's intent, whether through discussions, correspondence, or unambiguous language on the check, he is then bound to the agreement and cannot later turn around and sue for the remaining balance due under the former dispute. If a creditor does not assent to the condition, then the proper course of action is to return the check. Simply put, the creditor cannot have his cake and eat it too.

802 F.Supp. at 439.

Accordingly, as a result of section 28–3–310, the "intent" of the payee in accepting the check is no longer a crucial factor but instead is irrelevant. To this extent, the magistrate below, and the district court on appeal, incorrectly focused on Joan's intent with regard to the check tendered by John. The correct approach is to apply the terms of the statute.

In order for Joan's claim against John to be discharged under I.C. § 28–3–310, John had the burden of demonstrating that: 1) he, in good faith, tendered an instrument to Joan as full satisfaction of the claim; 2) the amount of the claim was unliquidated or subject to a bona fide dispute; 3) Joan obtained payment of the instrument; and 4) the instrument contained a conspicuous statement to the effect that it was tendered as full

satisfaction of the claim. We consider these factors in turn.

### A. *Good faith Tendering of an Instrument as Full Satisfaction of the Claim.*

■ Joan argues that John did not tender the check as full satisfaction of the claim in good faith. She relies for this assertion on the following clause of the 1988 agreement:

> In the event all of the above payments are not ma[d]e on or before June 27, 1993, all provisions set out in the Decree of Divorce and Property Settlement Agreement concerning alimony and all arrearages thereunder collectible at law shall be in full force and effect.

Both parties acknowledge that John did not make the required payments by June 27, 1993. Joan argues that once John failed to make the payments by this date, the terms of the divorce decree were in effect, not the terms of the 1988 agreement. At the time Joan received John's check in September 1993, the amount owed under the divorce decree was $1,575.53 per month. Joan contends that John could not in good faith attempt to satisfy his obligation under the divorce decree by making a $750 payment and marking the check "paid-in-full."

■ John argues that the payment of $750 was not made under the terms of the divorce decree but under the terms of the 1988 agreement, which he contends was an executory accord. He asserts that once he breached the 1988 accord by failing to complete all payments by June 27, 1993, Joan had two options: either to enforce the "original obligations," *i.e.,* the divorce decree, or to enforce the "compromise agreement," *i.e.,* the 1988 accord. *See World Wide,* 111 Idaho at 885, 728 P.2d at 774. He argues that by negotiating the check which John offered as payment under the 1988 executory accord, Joan elected to enforce the 1988 compromise agreement. We agree. As stated by our Supreme Court in *Wilson v. Bogert:*

> A rescission or repudiation of an executory compromise agreement by one party thereto confers a right of election upon the

other party. He may accept such rescission and himself rescind the agreement and assert the original claim, or he may reject such rescission and maintain an action for the enforcement of the compromise agreement.

81 Idaho 535, 543, 347 P.2d 341, 346 (1959). *See also W.F. Const.,* 103 Idaho at 715, 652 P.2d at 663 (where executory accord breached, nonbreaching party may "elect to proceed on the compromise agreement or upon the original contract").

The September 1993 check was sent in direct response to the stated ledger account balance Joan mailed to John. The ledger reflected the amount due under the 1988 accord and was provided in reply to John's inquiries regarding the amount due under that accord. Joan's argument that the payment was not tendered in good faith rests on her assertion that she informed John before sending him the ledger that the amounts reflected therein were accurate only if he had paid by the deadline. We note that many courts have held that negotiation of a check explicitly tendered as payment in full of a disputed or unliquidated claim discharges the obligation, despite the creditor's written or oral notification to the debtor that the check was not accepted as payment in full. *See* Vitauts M. Gulbis, Annotation, *Modern Status of Rule that Acceptance of Check Purporting to be Final Settlement of Disputed Amount Constitutes Accord and Satisfaction,* 42 A.L.R.4th 12 (1985). *See also Nordling v. Whelchel Mines Co.,* 90 Idaho 213, 409 P.2d 398 (1965) (notification given after receiving check).

However, we need not decide in the instant case whether, under I.C. § 28–3–310, a creditor who negotiates an instrument which the creditor knows was tendered as payment in full may avoid the creation of an accord and satisfaction by orally notifying the debtor prior to receiving the check that it would not be accepted as payment in full.[2] Here, there is no evidence that Joan informed John prior to receiving the check that she would not

---

**2.** This issue was addressed by our Supreme Court in *Perkins v. Highland Enterprises, Inc.,* 120 Idaho 511, 817 P.2d 177 (1991), but was

decided prior to the enactment of I.C. § 28–3–310 and is therefore not controlling in this case.

accept payment in full of the 1988 accord or that the divorce decree was controlling. She simply sent him the ledger in response to his inquiries as to what amount was due under the 1988 accord. Therefore, even assuming that John realized the payment deadline had passed, he reasonably believed that Joan might elect to enforce the 1988 accord rather than choosing to enforce the divorce decree and he, in good faith, tendered a check for payment in full under the 1988 accord. Furthermore, within ninety days after cashing the check, Joan could have tendered repayment to John of the amount of the check in order to avoid the statutory accord and satisfaction, under I.C. § 28–3–310(3)(b), but she did not do so.

### B. *Bona Fide Dispute.*

■ The magistrate found that "[w]hether we conclude that [Joan] was reasserting her rights under the decree's original terms or continuing under the 1988 agreement, the amount owed was in dispute." This finding is consistent with the record. As stated above, the parties were in dispute regarding the amount owed under the 1988 accord, particularly Joan's inclusion of certain late charges. At the heart of the dispute was the issue of whether the monthly installments had to be sent by John by the fifth of every month or received by Joan by that time. John ultimately capitulated, tendering Joan an amount slightly greater than that reflected on her ledger. We conclude that there was a bona fide dispute in this case.

### C. *Payment of the Instrument.*

■ It is undisputed that Joan cashed the check. Therefore she received payment of the instrument. *See* I.C. § 28–3–602.

### D. *Conspicuous Statement that Instrument Was Tendered as Full Satisfaction of the Claim.*

■ In the memorandum section of John's check, John had written, "Paid in Full

plus int. & late ch." This constitutes a conspicuous statement that the instrument was tendered as full satisfaction of the claim. Joan knew that the check was tendered only on the express condition that it be accepted in full satisfaction of Joan's claim under the 1988 accord. Joan obliterated John's notations prior to negotiating the check. However, an obligee who accepts and cashes a check tendered as full payment of a disputed claim cannot avoid the operation of an accord and satisfaction by erasing or obliterating the accord and satisfaction language before negotiating it. *See* I.C. § 28–3–310, cmt. 2 (payee's addition of notation to the check indicating it is accepted under protest or in only partial satisfaction of the claim does not avoid the effect of the maker's notation that the check is offered in full satisfaction); *Lincoln Nat'l Life Ins. Co. v. Prodromidis,* 862 F.Supp. 10 (D.C.Mass.1994); *Burke Co. v. Hilton Dev. Co., supra; Brown v. Coastal Truckways, Inc.,* 44 N.C.App. 454, 261 S.E.2d 266 (1980). *See also, generally,* 1 Am.Jur.2d *Accord and Satisfaction* § 21 (1994).

Having concluded that the requirements of I.C. § 28–3–310 have been met, we hold that John's debt to Joan under the 1988 accord was discharged by Joan's negotiation of John's "paid-in-full" check.[3] In light of our decision in this case, we need not address the appellants' additional argument that Roz Holley's interest in community property was not legally available for satisfaction of John's alimony obligations.

### CONCLUSION

We hold that Joan's negotiation of John's "paid-in-full" check constituted satisfaction of the 1988 accord. Therefore, the magistrate erred in holding that alimony obligations accruing after September 1993 were not discharged by negotiation of John's check. The district court's decision upholding the magistrate's order is reversed. The action is remanded for the purpose of entering a satis-

---

**3.** Joan argues that I.C. § 28–3–310 does not apply to judgments, but only to contract and tort claims. Although this Court previously has ruled that a judgment debt can be discharged by a valid accord and satisfaction, *see Knoke v. Charle-*bois, 107 Idaho 427, 690 P.2d 362 (Ct.App.1984), we need not again address the issue here, because of our conclusion that John's payment was made pursuant to the 1988 agreement, not pursuant to the divorce decree.

faction of judgment. Costs to appellants; no attorney fees on appeal are awarded.

LANSING, J., concurs.

PERRY, Judge, dissenting.

I must respectfully dissent. I believe the majority opinion is based upon the faulty premise that the check sent by John and negotiated by Joan was in payment and satisfaction of the 1988 accord.

However, the record in this case shows that the magistrate found that Joan had elected to proceed under the original 1981 divorce decree. The majority opinion does not hold that the magistrate's finding is unsupported by the evidence submitted. The magistrate's finding, therefore, should not be overturned unless held to be clearly erroneous.

As stated by the magistrate:

Furthermore, [John] has offered no evidence or suggested calculations that would allow this court to conclude that he had fully paid under the terms of the [1988] accord by June of 1993. He simply wants the court to forgive his failure since it appeared [Joan] did, at least for a while. *Therefore, the accord failed and the obligations of the parties reverted back to the decree of divorce as amended.*

The accord and satisfaction that occurred in September of 1993 . . . dealt with all disputed amounts up to and including that date. However, that accord did not affect new obligations or new judgments occurring thereafter. As each alimony payment becomes due, it creates a new judgment in favor of [Joan]. *The accord and satisfaction having occurred in September of 1993, [John] was obligated to provide alimony in an amount as calculated under paragraph 5) of the Decree of Divorce, at pages 3, 4, and 5 for October 1993, and each month thereafter.* Therefore, [John] is entitled to a partial satisfaction of a judgment with respect to all amounts due up to and including Septem-

ber of 1993, but is still obligated for all amounts accruing thereafter.

(Emphasis added).

As further explained in the district court's opinion:

That is the problem in this case. The magistrate had to find out what "claim" was meant by [John] to be satisfied by September 1993 payment of $750. Pursuant to the statute, I.C. § 28–3–310(2), the burden of making sure the claim to be defined "conspicuously" is on the claimant [John] in this case.

Herein lies the entire case of [John]. He actually asserts a new accord having breached the November, 1988 accord. He wants [Joan], by the acceptance of approximately $19 in new consideration, to satisfy another accord as offered in the check of September, 1993. However, *the issue of the intent of the parties is a contractual issue which is a finding of fact by the trial court. In this case, the trial court found that there was an accord reached by law of I.C. § 28–3–310, however, the terms were as of the date of the negotiation of the check and did not affect the underlying obligation of the parties.*

[Joan] had previously said she was going back to the original judgment in her telephone conversation and then showed her intent once again by obliterating the limited endorsement that [John] inserted to try to resurrect the November 1988 accord, or in offering the check, a new contract for yet another accord to end the 1981 judgment.

*The magistrate made the factual finding it was not the intent of [Joan] to enter into another accord or to resurrect the November 1988 accord. However, following I.C. § 28–3–310, the magistrate found correctly that as a matter of law, the cashing of the specially endorsed check settled all accounts on the original 1981 judgment, which were due to date. It did not settle the dispute based upon the 1988 accord or a newly offered accord because that was never the intent of [Joan].*

The question to be settled by the magistrate was one of the intent of the parties as concerns the September, 1993 check.

[John's] intent and hope was to reinstate the November, 1988 accord, or to propose a new accord supported by new consideration to completely extinguish the 1981 judgment. [Joan's] intent was to proceed under the 1981 judgment once the 1988 accord was materially breached by [John]. *The magistrate settled the question of fact in favor of [Joan]. The court in its opinion found that she never intended to proceed under the November 1988 accord or to enter into a new accord, but rather to proceed under the 1981 judgment and to enforce her rights pursuant to that judgment for accrued alimony.*

The magistrate then correctly followed I.C. § 28-3-310 to compromise all preexisting payments due under the 1988 judgment, however, *the judgment was left intact consistent with the factual finding of [Joan's] intent following the breach of the November 1988 accord.*

(Emphasis added).

Therefore, this Court is bound by the factual findings of the magistrate unless it holds that said findings are unsupported by the evidence at trial and, thus, clearly erroneous. Without further addressing those findings, however, the majority apparently proceeds on its own findings of fact by stating:

John argues that the magistrate erred in concluding that Joan's negotiation of the "paid-in-full" check did not satisfy alimony obligations accruing after September 1993. He contends that Joan's negotiation of the check effected satisfaction of the *1988 accord* and discharged the underlying obligation. Therefore, he asserts, he does not owe any amount to Joan.

. . . .

John argues that the payment of $750 was not made under the terms of the divorce decree but under the terms of the 1988 agreement, which he contends was an executory accord. He asserts that once he breached the 1988 accord by failing to complete all payments by June 27, 1993, Joan had two options: either to enforce the "original obligations," *i.e.,* the divorce decree, or to enforce the "compromise agreement," *i.e.,* the 1988 accord. *He argues that by negotiating the check which*

*John offered as payment under the 1988 executory accord, Joan elected to enforce the 1988 compromise agreement. We agree. . . .*

. . . .

. . . Here, there is *no evidence that Joan informed John prior to receiving the check that she would not accept payment in full of the 1988 accord or that the divorce decree was controlling.* She simply sent him to the ledger in response to his inquiries as to what amount was due under the 1988 accord. *Therefore, even assuming that John realized the payment deadline had passed, he reasonably believed that Joan might elect to enforce the 1988 accord rather than choosing to enforce the divorce decree and he, in good faith, tendered a check for payment in full under the 1988 accord. . . .*

. . . .

. . . *Joan knew that the check was tendered only on the express condition that it be accepted in full satisfaction of Joan's claim under the 1988 accord.*

(Citation omitted, emphasis added).

Therefore, under our standard of review, I am constrained to affirm the magistrate's findings and conclusions that Joan elected to enforce the 1981 decree, not the 1988 accord wherein Joan compromised all past, present and future alimony for a lump sum of $10,000. Accordingly, the tendered and negotiated check satisfied all payments due up to and including that date, October 1993. It did not, however, extinguish future alimony payments, and the judgments to be entered thereon, which had not yet come due pursuant to the divorce decree. In spite of the intent of the majority to the contrary, delinquent parties will simply attempt to use this opinion to alleviate themselves of all future alimony payments by writing "paid in full" on any one of their checks. Thus, I dissent and would affirm the reasoning set forth by the magistrate.