**Robin KRIPP, Appellant,**

v.

**Anthony KRIPP, Appellee.**

Superior Court of Pennsylvania.

Argued May 31, 2001.
Filed Sept. 14, 2001.

Michael J. Reed, Paoli, for appellant.

Carolyn R. Mirabile, Norristown, for appellee.

Before: EAKIN, MUSMANNO, and TODD, JJ.

TODD, J:

¶ 1 In this case of first impression, Robin Kripp ("Wife") appeals from the order entered October 23, 2000 by the Honorable James P. MacElree, II, of the Court of Common Pleas of Chester County denying her petition for contempt filed against her former husband, Anthony Kripp ("Husband"). The trial court, following a hearing in which parol evidence was admitted in order to interpret the intent of the parties by the use of the word "cohabitation" in their Property Settlement Agreement, denied Wife's contempt petition, holding that she had violated the terms of the Property Settlement Agreement by cohabiting with another woman. Upon thorough review of the record before us, as well as the law of this Commonwealth, we reverse. .

¶ 2 The record reveals the following relevant facts and procedural history. The parties were married on April 19, 1982. Three children were born of this marriage. The parties separated in March of 1996 and, on July 18, 1996, Anthony Kripp filed a divorce complaint against Robin Kripp. A decree in divorce was entered on July 13, 1998. The parties previously had executed a Property Settlement Agreement ("Agreement") on May 12, 1998 as part of the divorce proceedings which was incorporated, but not merged, with the divorce decree. Following the divorce, Wife relocated to Kentucky, where she currently resides.

¶ 3 Pursuant to the initial proposed Agreement, which was prepared by Wife's counsel, Husband was to pay to Wife a total of $74,000 of the total marital estate of $148,000 plus one half the value of the parties' vehicle and fifty percent of Husband's pension plan pursuant to a Qualified Domestic Relations Order. The payments Husband was to make included approximately $28,000 cash plus $60,000 payable in the amount of $1,000 monthly for sixty months plus simple interest at 8%. Husband made handwritten modifications to the draft Agreement, including reducing the value of the marital estate to $114,000 and eliminating distribution of his pension to Wife. Instead, he proposed to pay $20,000 cash to Wife plus $60,000 over five years plus one half of the sale proceeds of their vehicle, as well as unspecified debts and $4,000 toward Wife's counsel fees. Husband gave the Agreement, modified in his handwriting, to Wife for her review and she signed it. Only then did Wife show the modified Agreement to her counsel, who wrote a letter to Husband's counsel stating the Agreement was "ratified." (Correspondence of Michael J. Reed, Esquire, 6/1/98.)

¶ 4 Section 4 of the Agreement contained the following clause, the starred portion of which was handwritten by Husband, which Wife signed:

### 4. *ALIMONY/SUPPORT*

Husband shall pay such amount as shall provide $1000.00 per month net of child support to Wife as alimony for sixty consecutive months (five years) commencing on the first day of the month following entry of Decree of Divorce. The parties intend to sign all documents required to obtain final Decree of Divorce at the same time as the signing hereof.

> \* **Alimony payments to end should wife co-habitate [sic], except that a minimum alimony period of 24 months be paid.**

(Property Settlement Agreement, 5/12/98, at 10–11 (emphasis added).)

¶ 5 Following the parties' execution of the Agreement, Husband paid Wife $1,000 monthly for 24 months and then ceased payment. On May 29, 2000, Husband advised Wife during a telephone conversation

that, in his opinion, he had no obligation to pay alimony beyond 24 months because she was cohabiting with another woman. Husband testified at the contempt hearing that during the same conversation, Wife requested Husband to send one additional payment of $1,000 because she had bills to pay. On June 1, 2000, Husband sent a payment of $1,000, on which he had marked "Final Payment" with a letter confirming their telephone conversation. Wife cashed the check.

¶ 6 On July 18, 2000, after receiving no additional payments from Husband, Wife filed a petition for contempt alleging that Husband had breached the Agreement by failing to pay her alimony pursuant to the provisions contained therein. A hearing initially was scheduled on September 5, 2000, but due to Wife's unavailability, the case was continued and re-listed for October 5, 2000.

¶ 7 On October 4, 2000, Wife's counsel sought a second continuance, asserting that: 1) Wife was unavailable to attend the hearing as she was in Kentucky for job training; 2) Wife did not have sufficient funds to travel to Chester County, Pennsylvania; 3) Wife wanted to travel with her mother, who was hospitalized; 4) Wife's counsel wanted to subpoena Husband's employer for pension records; and 5) Wife's counsel had two trial conflicts in Montgomery County. On October 5, 2000, Wife's counsel again requested a continuance, which the trial court denied. After unsuccessfully attempting to reach Wife by telephone at her Kentucky residence, the trial court recessed the hearing until the following morning to afford Wife's counsel more opportunity to confer with her.

¶ 8 The following morning, before the hearing, the trial court again attempted to contact Wife by telephone, but to no avail. In Wife's absence, the trial court conducted the hearing and admitted into evidence Husband's testimony regarding the intent of the parties and other extrinsic evidence surrounding what he stated was their understanding of the terms of the Property Settlement Agreement in general and "cohabitation" in particular. At the conclusion of the hearing, the trial court denied Wife's contempt petition and this timely appeal followed.

¶ 9 On appeal, Wife asks us to review the following issues, which we have paraphrased: [1]

I. Did the trial court err in violating the rule against admission of parol evidence by considering Husband's uncontroverted testimony that he and Wife agreed that "cohabitation," as stated in the Property Settlement

---

1. We note that in *Gaster v. Gaster,* 703 A.2d 513 (Pa.Super.1997), a panel of this Court held, following a contempt hearing wherein the court entered a child support order involving college expenses against exhusband, but did not make a finding of contempt, that an appeal from such an order was interlocutory. *Id.* at 518. The panel held, under the facts of that case, that the mother's only remedy was to pursue a contract action on the property settlement agreement, at law or in equity. More recently, however, in *Fina v. Fina,* 737 A.2d 760 (Pa.Super.1999), in the context of a mother's petition for contempt and enforcement of a property settlement agreement, we rejected the argument that an appeal from the trial court's order requiring father to reimburse mother for their children's tuition was interlocutory, noting the broad enforcement powers specifically conferred by our Legislature by way of sections 3104, 3105 and 3502(e) of the Divorce Code, 23 Pa.C.S.A. 3101 *et seq.,* effective March 19, 1991. We held that mother could pursue her contempt and enforcement action, either under the Divorce Code or as a contract action at law or in equity and the trial court's order therefore, was appealable. *Id.* at 763, n. 1. We find the rationale of *Fina* to be persuasive and will thus review Wife's appeal on the merits.

Agreement, included living with anyone, including a family member or member of the same sex, despite the fact that the Agreement did not specifically state this definition?

II.    Did the trial court err in expanding the definition of "cohabitation" to include living with anyone, including a family member or member of the same sex?

III.   Did the trial court err in finding that, in the alternative, Husband's June, 2000 payment of $1,000 to Wife against a $36,000 debt was adequate consideration to constitute an accord and satisfaction of Husband's debt to Wife pursuant to the parties' telephone discussions and the Agreement?

■ ¶ 10 In her first and second assertions of trial court error, Wife argues that the trial court erred by looking outside of the face of the Property Settlement Agreement to interpret the intent of the parties in their use of the term "cohabitation." In the present case, the Property Settlement Agreement states on its face, and the parties agree, that the Agreement is incorporated, but not merged, with the divorce decree. (Property Settlement Agreement, 5/12/1998, at 2.) Therefore, the Agreement must be viewed as a separate and independent contract that survived the divorce decree. *McMahon v. McMahon*, 417 Pa.Super. 592, 612 A.2d 1360, 1363 (1992) (*en banc*). Moreover, the Agreement states that "[n]o modification or waiver of any of the terms of this Agreement shall be valid unless in writing and signed by both parties . . . ." (Property Settlement Agreement, 5/12/1998, at 5.) Thus, it is apparent that the parties' language used in the Agreement, a contract, is controlling.

¶ 11 We have previously held that a basic tenet of contract law is that when the language of a contract is clear and unam-

biguous its meaning must be determined by an examination of the content of the contract itself. Therefore, it is axiomatic that this Court "must construe the contract only as written and may not modify the plain meaning under the guise of interpretation." *Little v. Little*, 441 Pa.Super. 185, 657 A.2d 12, 15 (1995).

■ ¶ 12 The rule against admission of parol evidence prevents the parties to a written contract from introducing evidence of alleged prior or contemporaneous agreements that would effectively alter the contents or terms of a written contract. It is well-settled that:

> The parol evidence rule "forbids the introduction of parol evidence of antecedent or contemporaneous agreements, negotiations and understandings of the contracting parties for the purposes of varying or contradicting the terms of a contract which both parties intended to represent the definite and complete statement of their agreement."

*Davis v. Davis*, 422 Pa.Super. 410, 619 A.2d 743, 746 (1993) (citation omitted). Furthermore, it is well-recognized that "[a]bsent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements." *McMahon*, 612 A.2d at 1363 (citations omitted).

¶ 13 Wife asserts that the Property Settlement Agreement is clear and unambiguous on its face and that the trial court erred in admitting extrinsic, parol evidence offered by Husband about the parties' intent in their use of the word "cohabitation" at the hearing. She cites this Court's decision in *DeWitt v. Kaiser*, 335 Pa.Super. 258, 484 A.2d 121 (1984), in support of the proposition that the trial court may take parol evidence only when the contract in question is so imprecise as to create an ambiguity. *Id.* at 124.

¶ 14 Husband, on the other hand, argues that the trial court properly determined that the term "cohabitate," as contained in the Property Settlement Agreement, was ambiguous. Because the Agreement contains no definition of the term "cohabitation," the trial court held, and Husband maintains, that consideration of parol evidence regarding the parties' past conversations and intent in their use of the term "cohabitate" was appropriate. We disagree.

¶ 15 The trial court, in relying on the American Heritage Dictionary definition of "cohabitation," which defines the term broadly as: "1) To live together as spouses; and 2) To live together in a sexual relationship when not legally married" (Trial Court Opinion, 1/10/01, at 5), ignored the fact that this Court consistently has held, pursuant to the Divorce Code, 23 Pa.C.S.A. § 101, that "in order to be found in 'cohabitation' one must *at least* be doing so 'with a person of the opposite sex who is not a member of the family of the petitioner [alimony recipient] within the degrees of consanguinity." ' *Lobaugh v. Lobaugh,* 753 A.2d 834, 836 (Pa.Super.2000); 23 Pa. C.S.A. § 3706. Indeed, we have further elaborated that in order to bar alimony, cohabitation occurs when:

> two persons of the opposite sex reside together in the manner of husband and wife, mutually assuming those rights and duties usually attendant upon the marriage relationship. Cohabitation may be shown by evidence of financial, social and sexual interdependence, by a sharing of the same residence, and by other means. . . . An occasional sexual liaison, however, does not constitute cohabitation.

*Miller v. Miller,* 352 Pa.Super. 432, 508 A.2d 550, 554 (1986).

¶ 16 Wife argues that the trial court's error in admitting Husband's uncontro-

verted testimonial evidence, particularly in light of Wife's absence from the proceedings, was particularly egregious. She further alleges that not only was the Agreement unambiguous on its face, but the record, even with the added extrinsic parol evidence, fails to establish an "occasional sexual liaison," let alone a sexual relationship, with anyone at all.

¶ 17 We agree with Wife's contention that the record, even with the additional parol evidence offered by Husband in Wife's absence, fails to establish that cohabitation in the strictest sense had occurred. However, we need not reach this contention, for it is clear that the Pennsylvania legislature has not yet expanded its definition of "cohabitation" to include same-sex partners. In *In re Adoption of C.C.G.,* 762 A.2d 724 (Pa.Super.2000) (*en banc*), in holding that the Adoption Act, in its current form, does not recognize adoption rights for same-sex partners of a child's natural or adoptive parent, a majority of this Court sitting *en banc* recently stated:

> Limitations on the courts' power to promulgate policy decisions is consistent with the constitutional doctrine of the separation of powers, a doctrine which has been at the heart of our governmental system since the 1776 Plan or Form of Government for the Commonwealth of the State of Pennsylvania. 'By this doctrine, the legislative branch, and not the judicial branch, is given the power to promulgate legislation. To aggregate to ourselves the power to write legislation would upset the delicate balance in our tripartite system of government.'

*Id.* at 728 (citations omitted).

¶ 18 As a majority of this Court has so held with regard to the question of same-sex adoption, as well as same-sex marriage, *see De Santo v. Barnsley,* 328 Pa.Super. 181, 476 A.2d 952, 956 (1984), we

must defer to our Pennsylvania legislature the task of determining whether to expand the definition of cohabitation to include same-sex partners under the Divorce Code.

¶ 19 Accordingly, because we hold that the term "cohabitation" heretofore specifically has been defined in our statutes and case law as requiring members of the opposite sex who are not family members within the degrees of consanguinity to reside together "in the manner of husband and wife," we find that its reference by the parties in their Property Settlement Agreement was not ambiguous. Therefore, the trial court committed an error of law and abused its discretion by admitting parol evidence regarding the parties' intent in their use of the term. Moreover, with regard to Wife's second contention of error, we find that the trial court improperly expanded the meaning of the term "cohabitation" to include Wife's same-sex roommate despite the absence of specific language in the Agreement to that effect.

¶ 20 Third, Wife asserts that the trial court erred when it held that the final payment of $1,000 made by Husband to Wife marked "Final Payment" served as an accord and satisfaction of his remaining $36,000 debt to her. She argues that the payment lacked good faith and adequate consideration. We previously have defined the elements of a valid accord and satisfaction as:

> (1) a disputed debt (2) a clear and unequivocal offer of payment in full satisfaction and (3) acceptance and retention of payment by the offeree. *Law v. Mackie*, 373 Pa. 212, 95 A.2d 656 (1953). It has been held, however, that partial payment of a *liquidated* debt does not constitute an accord and satisfaction because in such a situation the creditor has given no consideration. *Nies v. Metropolitan Casualty Insurance Co. of New*

*York*, 317 Pa. 545, 177 A. 754 (1935). As *Nies* explained:

> "The reason ... is that the debtor gives nothing he was not already bound to give, and the creditor receives nothing he is not already entitled to receive, and there is therefore no consideration." That has been the law in this State from at least as far back as *Lowrie v. Verner*, (1834) 3 Watts, 317, 319 (1834), and so far as we are aware has never been seriously doubted since then.

> *Id.* at 549, 177 A. at 756 (internal citations omitted).

*PNC Bank, Nat'l Ass'n v. Balsamo*, 430 Pa.Super. 360, 634 A.2d 645, 655 (1993) (citations omitted). An accord is contractual in nature and rests upon the elements of a valid contract. *Nowicki Construction Co., Inc. v. Panar Corp., N.V.*, 342 Pa.Super. 8, 492 A.2d 36, 39–40 (1985). Legal consideration sufficient to support an accord arises when the parties have a legitimately disputed claim, and the creditor accepts less than it claims is due. *Id.*

¶ 21 In the case before us, there is no question that the Agreement specifically stated that Husband was to pay Wife $36,000 in $1,000 monthly installments over and above the $24,000 which had already been paid unless she remarried or cohabited. Further, there is no question that Wife did not agree that by her living with another woman Husband's obligation to pay alimony under the Property Settlement Agreement was terminated. Additionally, the record reveals that, by Husband's own testimony, Wife unquestionably was under significant financial duress in her telephone discussion with Husband.

¶ 22 Our legal research has yielded no Pennsylvania cases in which our courts have applied the defense of accord and satisfaction in a child support, spousal sup-

port, or marital property settlement context. Our broader research of case law in other jurisdictions leads us to observe that although several state courts have considered the defense in family law cases, most have been hesitant to find accord and satisfaction absent overwhelming evidence of the parties' mutual intent that the debt be compromised.[2]

¶ 23 We are reluctant to permit application of the defense of accord and satisfaction in the case before us based on the scant and questionable record and find that the trial court erred in doing so. We find the trial record, consisting only of Husband's testimony, to be wholly inadequate to establish that the elements of accord and satisfaction have been met and that Wife willingly accepted a payment of $1,000 in lieu of $36,000.

¶ 24 Furthermore, in light of our previous determination that under Pennsylvania law, Wife could not be found to "cohabitate" under the terms of the Property Settlement Agreement by living with another woman, we find that no dispute remains as to the claim. Accordingly, pursuant to the terms of the Property Settlement Agreement, Wife is entitled to the continued payment of $1,000 monthly by Husband for the additional 36 months, absent any future cohabitation, remarriage or other breach of the Agreement, minus any payments made during the course of negotiations regarding this dispute.

¶ 25 For all of the foregoing reasons, we reverse the trial court's order denying Wife's petition for contempt and remand the matter for entry of an order consistent with this Opinion.

¶ 26 Reversed and remanded. Jurisdiction relinquished.

---

**2.** *See, e.g., Schulze v. Jensen,* 191 Neb. 253, 214 N.W.2d 591 (1974); *Bromhal v. Stott,* 116 N.C.App. 250, 447 S.E.2d 481 (1994), *aff'd,* 341 N.C. 702, 462 S.E.2d 219 (1995); *In re Marriage of Thompson,* 41 Cal.App.4th 1049, 48 Cal.Rptr.2d 882 (1996); *Crumpacker v. Crumpacker,* 239 Kan. 183, 718 P.2d 295 (1986); *Vander Woude v. Vander Woude,* 501 N.W.2d 361, 1993 S.D. Lexis 64, (1993). *But see Holley v. Holley,* 128 Idaho 503, 915 P.2d 733 (1996) (finding accord and satisfaction where evidence reflected parties' clear intent to compromise husband's alimony obligation.)